# CHARLESTON.

A. A. Low *et al.* v. County Court of Lincoln County.

Submitted February 3, 1886.—Decided March 27, 1886.

1. No appeal lies from a judgment of a county court rendered under sec. 7 chap. 32, of the Acts of 1882, refusing to correct the assessed voluation on land. Such judgment can be reviewed if at all only by *certiorari*. (p. 786.)

2. An appeal lies under sec. 94 of chap. 161 of the Acts of 1882, from a judgment of a county court refusing to correct an assessment, where it is claimed, that the party assessed with the taxes is not chargeable therewith. (p. 787.)

3. One party may own the surface of the land, and another may own the minerals underlying the surface. (p. 789.)

4. Where one party owns the surface of the land, and another owns the minerals underlying the surface, the taxes may be assessed on the interests in said land to the owners thereof respectively. Sec. 4 of chap. 32 of the Acts of 1882, requiring such interests to be so taxed is constitutional. (p. 789.)

*E. L. Buttrick* for plaintiff in error.

*Kenna & Chilton* and *J. F. Brown* for defendant in error.

Johnson, President :

On July 9, 1883, Abel A. Low and others filed in the county court of Lincoln county a petition for the correction of the assessment of taxes on their lands in the said county, on the ground that the proper number of acres were not put in the proper districts of the county, that is, that the lands were not properly apportioned among the said districts, in which they were situated, and also because the valuations were excessive, and because, where the parties owned the minerals merely, they ought not to be taxed therein. They were assessed in one of the districts, where they owned the surface as well as the mines on the lands at $2.00 per acre and in the other two districts the lands were assessed at $1.50 per acre ; and in all three of the districts, where they owned the mineral interest only, such interest was taxed at $1.00 per acre. Evidence was taken, which is certified, and the

court corrected the apportionment of the lands among the several districts but refused to lower the valuation of the lands, either where they owned both the land and the minerals, or where they owned merely the minerals.

From the judgment of the county court the petitioners appealed to the circuit court; and the circuit court affirmed the decision of the county court. To this judgment of the circuit court the petitioners obtained a writ of error.

Section 7 of ch. 32 of the Acts of 1882, amended and reenacted by sec. 7 of ch. 72 of the Acts of 1883 provides : "Any person feeling himself aggrieved by the assessment of his real estate, made under the provisions of this act, may within one year after the filing of a copy of such assessment with the clerk of the county court, apply by himself or his agent, to the said court for redress, first giving reasonable notice of his intention to the prosecuting attorney, and stating in such notice the character of the correction he desires.    It shall be the duty of the prosecuting attorney upon being so notified to attend to the interests of the State at the trial of such application.    If upon hearing the evidence offered, the county court shall be of opinion, that there is error in the assessment complained of, or that the valuation fixed by the commissioner is excessive, the said court shall make such order correcting the said assessment as is just and proper," &c.

Chapter 32 of the Acts of 1882 is the chapter which provides for the appointment of commissioners in each district in every county of the State, " to re-assess the value of real estate therein."    It does not provide for an appeal from the judgment of the county court under sec. 7.    Neither is there in any other statute any provision for an appeal from such judgment.    If therefore it could be reviewed at all, it could only be by *certiorari.* (*Dryden* v. *Swinburn*, 15 W. Va. 234.    *Dryden* v. *Smith, judge, &c.,* 15 W. Va. 483.) If therefore this application is made under that chapter the circuit court had no jurisdiction of the appeal.    The only statute under which an appeal for erroneous assessment of taxes could be had is sec. 94 of ch. 29 of the Code, as amended by ch. 161 of the Acts of 1882.    This section does in terms authorize an appeal from a judgment of the county court rendered thereunder.    But that section does not authorize

the correction of the assessed value of the lands except errors in the land-books of 1881, as to the value of " any tract or lot as re-assessed in 1875, and not corrected in that year or the year 1876."

But before making any correction of the latter class the court is required to ascertain the true values of all the lots in the vicinity of that complained of or elsewhere in the district, wherein the land, the assessment of which is complained of, is situated, so as to equalize the assessment of the whole, and place each of the tracts or lots at its true value. But it is further declared that " the court shall not in any such case so change the value of such tracts and lots, as to reduce the aggregate value of the whole of the real estate in such magisterial district, as the same appears on the said land books of 1881." It provides for the correction of " the value, quantity, distance and bearing from the court-house or the local description of any tract of land entered in such land-book, as is by *mistake* or *fraud* incorrectly entered therein." It also provides for the correction, " if any tract of land entered therein is by *mistake* or *fraud* charged with a greater or less amount of taxes and levies than should have been charged thereon; *or if any tract or lot of land is entered and charged therein to any person who is not by law chargeable with taxes thereon*; or if the person properly chargeable with taxes on any tract or lot entered therein is not so charged, or that there is any mistake in the name of the person charged with taxes on any tract or lot of land entered therein." I do not pretend to set out all the provisions of this section.

There is nothing in the application of the petitioners here to bring the case under any of the provisions of this section, except that part thereof, which charges that the petitioners ought not to be charged with taxes on their interest in the minerals, when they did not own the surface; and they in their petition therefore claim, that they are charged with taxes, when by law they are not so chargeable. This then is the only question raised by this record, which we are permitted to examine. This may justly be regarded as properly brought under sec. 94 of ch. 161 of the Acts 1882, and having been decided adversely to them by the county court of

Lincoln, an appeal lay therefrom to the circuit court of Lincoln and from that court to this, as the amount in controversy exceeds $100.00.

The Constitution, Article X., sec. 1, provides : "Taxation shall be equal and uniform throughout the State, and all property both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." Sec. 4, of ch. 32 of the Acts of 1882, provides : "Each commissioner * * * shall after receiving the books and instructions to be furnished by the Auditor, proceed to examine in person all the tracts of land * * * within his district, and shall upon examination and in accordance with his said instructions, ascertain and assess the fair cash value thereof, and in such assessment, the minerals underlying the surface, shall be considered in ascertaining the value of such land in current moneys; and when the mineral and coal privilege, or interest is held by a party or parties, exclusive of the surface, the same shall be asssessed to such party or parties at its cash market value."

In *Logan* v. *Washington County*, 5 Casey 373, it was decided, that, where the owner of coal land has sold the right to take all the coal in his land and retained the land itself, the owner of the land and the owner of the coal are both taxable each according to his respective interests. But this principle does not justify a higher valuation on the two interests taken separately, than there would have been, if both had continued in the same person.

A majority of the court by Lowrie, judge, said : "The question seems to us a very simple one. The assessors are required to value for taxation all real estate according to its selling value, and this of course is measured by all the circumstances and advantages that tend to enhance its price, of which coal is a most important item. The coal is therefore necessarily included in the valuation, if it is accesible, and some person must pay the tax on it. The only question is shall it be paid by the owner of the coal, or by one who does not own it? To this there can be but one answer. There is a decided ownership of the land, and there ought to be a decided taxation. The case is not at all singular in its principle. Where one man owns land, and another a rent issuing

out of it, both are separately taxable according to their interests, so it is where the privilege of wharf, or ferry, or fishing belongs to one, and the land to another.   These cases are expressly mentioned in the tax law, and they do not exclude other cases involving the same principle, but rather include them.   *   *   But the principle would not justify a higher valuation on the two interests taken separately, than there would have been if both had continued in the same person. The value of the land with the coal in it, is not increased by the separation of the interests; but this separation requires an apportionment of the valuation among the different owners, so that each may bear his portion of the public taxes, and that one shall not have to pay for the other."

In *Sanderson* v. *Scranton*, 105 Pa. St. 474, Mr. Justice Clark, in delivering the opinion of the whole court said : "We are of opinion therefore that there was such a severance of the surface from the underlying strata, as created a divided ownership in these distinct portions of the land.   It is the duty of the assessors, in the several counties to take an account in the form directed by law, of all houses, lands, &c., and to assess and value the same, at the rate or price, for which they would sell, at a *bona fide* sale, after full public notice.   Land has an indefinite extent, upwards as well as downwards, but the law recognizes horizontal divisions of land.   A severance of the surface from the underlying strata may be created, either by reservation or express grant; after severance a mineral right is an independent interest in land ; it forms a distinct possession, is held upon a distinct title, and is as much the subject, of sale, devise, or inheritance, and of separate taxation as the surface land.   *Caldwell* v. *Copeland*, 1 Wright 427.   A mineral right is taxable as land ; the owner of the surface and of the mine are each taxable according to the value of their respective interests ; where there is a divided ownership there must be a divided taxation.   *Logan* v. *Washington Co.*, 5 Casey 373.   The owner of surface land can no more be held for the tax upon the mineral strata, after a severance, than can the owner of the mine be held for the taxes upon the surface."

The statute of this State providing for the taxation of the surface to one and of the minerals to another, when one owns

the surface, and the other owns the minerals, is in full accord with those decisions and is in harmony with our constitution, which requires "taxation to be equal and uniform, and that all property both real and personal shall be taxed according to its value to be ascertained as directed by law." No man is required to pay taxes on property which he does not own; and no man is permitted to escape, who does own property. When therefore one man owns the surface of the land, and another owns the minerals in the same land, there is a divided ownership in the land, and justice and equity in taxation both require, that each should be assessed with and pay taxes on the part of the land which he owns. It would be as unjust to require the owner of the surface to pay taxes on the minerals, which he does not own, as to require the owner of the minerals to pay taxes on the surface, which he does not own. And the owner of the surface should no more be required to protect the mineral interest from forfeiture for the non-payment of the taxes thereon, than the owner of the minerals should be required to protect from forfeiture and sale for non-payment of the taxes thereon the surface, which he does not own. Each should be assessed with the interest in the land which he owns.

The court therefore did not err in holding the mineral interest in land owned by the petitioner chargeable with the taxes assessed thereon.

The judgment of the circuit court is affirmed.

Affirmed.