717 S.E.2d 883

FOSTER FOUNDATION, Petitioner,

v.

Glen B. GAINER, III, West Virginia State Auditor, and The West Virginia Court of Claims, Respondents.

No. 35627.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 2011.

Decided March 10, 2011.

1999) [improvement period generally]."

Audy M. Perry, Jr., Daniel J. Konrad, Charles F. Bellomy, Huddleston Bolen LLP, Huntington, WV, Attorneys for the Petitioner.

Lisa A. Hopkins, General Counsel, L. Danae DeMasi, Assistant General Counsel, Charleston, WV, Attorneys for the Respondent, Auditor Glen B. Gainer, III.

John R. Homburg, West Virginia Legislature, Joint Committee on Government and Finance Legislative Services Division, Charleston, WV, and Ray E. Ratliff, West Virginia Senate, Charleston, WV and Mark W. McOwen, West Virginia House of Delegates, Charleston, WV, Attorneys for the Respondent, West Virginia Court of Claims.

DAVIS, Justice:

The petitioner herein, Foster Foundation (hereinafter referred to as "the Foundation"), requests this Court to issue a writ of certiorari to relieve it from a decision rendered August 14, 2009, by the respondent herein, the Court of Claims of the State of West Virginia (hereinafter referred to as "the Court of Claims"). In that opinion, the Court of Claims denied the Foundation's claim for reimbursement of $457,386.79 in certification fees charged by the co-respondent herein, Glen B. Gainer, III, Auditor of the State of West Virginia (hereinafter referred to as "the Auditor"), in conjunction with the Foundation's redemption of its delinquent property. Before this Court, the Foundation contends that the Auditor improperly charged it the subject certification fees when its property had not been certified to the Auditor pursuant to W.Va.Code § 11A–3–8 (2010) (Repl.Vol.2010).[1] Upon a review of the parties' arguments, the designated record, and the pertinent authorities, we deny the requested writ of certiorari because the Auditor did not err by requiring the Foundation to pay the subject certification fee to redeem its property.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts underlying the instant controversy are not disputed by the parties. The Foster Foundation is a § 501(c)(3) non-profit organization[2] that owns and operates a retirement community in Huntington, West Virginia, which provides services for persons living independently, requiring assistance, or needing nursing care.[3] Until 1998, the Foster Foundation had been exempt from ad valorem property taxes with respect to the properties it owns in Cabell County, West Virginia. Changes in the state statutes concerning what properties are exempt from taxation, however, caused the Cabell County Assessor to assess taxes on the Foundation's property for the 1998 tax year. The Foundation challenged these assessments, claiming that it still was exempt.

In this regard, the Foundation filed a lawsuit in the Circuit Court of Cabell County against the Cabell County Assessor (hereinafter referred to as "the Assessor") on March 26, 1998; the Foundation did not, however, pay its assessed taxes. Thereafter, on November 2, 1998, the Foundation, the Assessor, the Cabell County Sheriff (hereinafter referred to as "the Sheriff"), and the West Virginia State Tax Commissioner executed an agreed order, which then was entered by the circuit court, whereby "[a]ll parties agree that the sale of property owned by Foster Foundation should not be part of any sale by the Sheriff of Cabell County until such time as the Circuit Court of Cabell County has ruled on whether Foster Foundation is exempt from ad valorem property tax." Following protracted litigation, which included two appeals to this Court, the circuit court concluded that the Foundation was not exempt from ad valorem property tax and, thus, was required to pay the taxes that had been assessed on its property. This final decision of the Circuit Court of Cabell County was entered on December 7, 2005.

During the ongoing proceedings, the Sheriff prepared a list of properties that had been sold, suspended, or redeemed, as required by W.Va.Code § 11A–3–9 (2010) (Repl.Vol.2010) & W.Va.Code § 11A–3–11 (2010) (Repl.Vol.

---

1. In 2010, the Legislature amended various statutes that are at issue in this case, making stylistic changes. To maintain consistency with the application of the law to the facts of this case, the facts of which span a period of some fourteen years, and because the pertinent amendments have not made substantive changes, we will reference the most recent, 2010 version of the statutes in our decision of this case.

2. See note 3, infra.

3. For further description of the Foundation's status as a non-profit organization and the nature of its business pursuits, see generally In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community, 223 W.Va. 14, 17–18, 672 S.E.2d 150, 153–54 (2008).

2010), and transmitted this list to the Clerk of the Cabell County Commission (hereinafter referred to as "the Clerk"). In turn, the clerk submitted this list to the Auditor pursuant to the statute's directive to do so. *See id.* Thus, the Foundation's now-delinquent property ultimately was transferred to the Auditor, at which time certification fees attached and were required to be paid before the property could be redeemed. *See* W.Va. Code § 11A–3–39(a) (1994) (Repl.Vol.2010). The Sheriff prepared the aforementioned delinquent land list and included the Foundation's property thereon for each of the tax years for which the Foundation failed to pay its taxes, *i.e.,* 1998 through 2005.

Upon the conclusion of the underlying litigation, the Foster Foundation owed property taxes that had been assessed to it, but that it had not paid, for tax years 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005. Although the Foundation claims that it did not know that its property had been certified to the Auditor during the pendency of its lawsuit, records maintained by the Auditor indicate that the Foundation contacted the Auditor's Office numerous times, beginning in 2001 and ending in 2006, to inquire about the amount required to redeem its property. On May 25, 2006, the Foundation redeemed all of its properties by paying to the Auditor a total of $6,555,877.29. Of this amount, $4,303,399.97 constituted the unpaid taxes for the aforementioned tax years; $1,794,148.03 had been assessed as interest on the delinquent taxes; $942.50 reflected publication fees; and $457,386.79 were certification fees that attached to the delinquent property upon its transfer to the Auditor's control. It is this $457,386.79 in certification fees that is the subject of the instant proceeding.

Following payment of these monies to the Auditor in redemption of its property, the Foundation filed suit in the Circuit Court of Cabell County on September 11, 2006, against the Sheriff and the Auditor to recover the interest, publication fees, and certification fees that it had paid to the Auditor. In short, the Foundation claimed that its property had not been certified properly to the Auditor and, thus, should not have incurred such fees. Following the parties' various motions, the circuit court, on April 17, 2007, determined that venue was not proper in Cabell County insofar as the action had been filed against a state entity, *i.e.* the Auditor; accordingly, the circuit court transferred the matter to the Circuit Court of Kanawha County. The Kanawha County Circuit Court, by order entered September 13, 2007, then determined that venue was not proper in Kanawha County, either, insofar as the Foundation's request for reimbursement of monies is a matter to be decided by the Court of Claims.

Following the Kanawha County court's dismissal of its suit, the Foundation filed the instant claim in the Court of Claims on December 6, 2007, against the Auditor, again seeking to recover the interest, publication fees, and certification fees it had paid in the redemption of its property. By opinion issued August 14, 2009, the Court of Claims rejected the Foundation's claim, finding that the Foundation's delinquent property had properly been transferred to the Auditor through the Sheriff's list of sold, suspended, and redeemed properties required to be prepared and submitted by W.Va.Code § 11A–3–9 & W.Va.Code § 11A–3–11. The Foundation moved the Court of Claims for rehearing of its decision, which motion was denied on October 15, 2009.

From these adverse rulings, the Foundation seeks a writ of certiorari from this Court. Although it had requested relief from the accrued interest, publication fees, and certification fees it had paid to redeem its property during its previous challenges to the propriety of these amounts, the Foundation limits its request for relief from this Court and seeks reimbursement only of the $457,386.79 in certification fees charged by the Auditor.

## II.

### STANDARD FOR ISSUANCE OF WRIT

■ The instant proceeding is before this Court upon a petition for writ of certiorari from the Court of Claims. A petition for a writ of certiorari invokes this Court's original jurisdiction. *See* W.Va. Const. art. VIII, § 3 ("The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and

certiorari.''). Certiorari "is an extraordinary remedy, used in cases where there has been an error in justice, which cannot be reviewed and corrected by the ordinary forms of procedure." *Ashworth v. Hatcher*, 98 W.Va. 323, 325, 128 S.E. 93, 94 (1924) (citations omitted). Thus, "[a] writ of certiorari will lie from an inferior tribunal, acting in a judicial or quasi-judicial capacity, where substantial rights are alleged to have been violated and where there is no other statutory right of review given." Syl. pt. 4, in part, *North v. Board of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977). *Accord Beverlin v. Board of Educ. of Cnty. of Lewis*, 158 W.Va. 1067, 1070, 216 S.E.2d 554, 556 (1975) ("It is settled in this jurisdiction that writ of certiorari is a proper procedure for testing the findings of an inferior tribunal." (citations omitted)); Syl. pt. 1, in part, *Quesenberry v. State Road Comm'n*, 103 W.Va. 714, 138 S.E. 362 (1927) ("The writ of 'certiorari' ... lies only to review judicial or quasi judicial actions of an inferior board or tribunal.").

■ The extraordinary remedy of certiorari is not granted as a matter of right, but rather is relief that rests within the sound discretion of the Court: "The remedy by writ of *certiorari* ... to review the judgment of a[n inferior tribunal], is not given as a matter of right, but is awarded by the court ... for cause on proper case shown." Syl. pt. 1, in part, *Harrow v. Ohio River R.R. Co.*, 38 W.Va. 711, 18 S.E. 926 (1894). *Accord W. Va. Rev. R.App. Proc. 16(a)* ("Issuance by the Court of an extraordinary writ is not a matter of right, but of discretion sparingly exercised."); Syl. pt. 2, in part, *Welch v. County Court of Wetzel Cnty.*, 29 W.Va. 63, 1 S.E. 337 (1886) ("A writ *of certiorari* is not a writ of right, but the issuing of it is dependent on a sound judicial discretion[.]").

■ Moreover, the writ of certiorari is proper only when there exist no other means of reviewing the lower tribunal's decision. This is so because "[c ]*ertiorari* is an extraordinary remedy resorted to for the purpose of supply[ing] a defect of justice in cases obviously entitled to redress and yet unprovided for by the ordinary forms of proceeding." Syl. pt. 1, *Poe v. Machine Works*, 24 W.Va. 517 (1884). *Accord Poe*, 24 W.Va. at 520 (observing that certiorari "is generally used in such cases as might otherwise, without its

intervention, leave the party remediless"). Therefore, "[w]here it is proper to review the proceedings of inferior jurisdictions, where neither appeal, writ or error or *supersedeas* are allowed to lie, resort may be had to *certiorari.*" Syl. pt. 1, *Meeks v. Windon*, 10 W.Va. 180 (1877). Likewise "[i]t is well established as a general rule that when the party aggrieved can obtain redress [by appeal] or writ of error, he will not be allowed this unusual remedy...." Syl. pt. 3, in part, *Poe*, 24 W.Va. 517. *Accord Welch*, 29 W.Va. at 73, 1 S.E. at 344 ("[I]t is clear ... the writ of *certiorari* ought not to issue but should be denied, where there is other [a]dequate remedy[.]" (citation omitted)). In short, "certiorari is not a substitute for an appeal or writ of error." *North*, 160 W.Va. at 259, 233 S.E.2d at 418 (citation omitted).

■ When determining whether to award a writ of certiorari in a particular case, the standard for the issuance of the writ is quite limited. In this regard we have observed and now hold that " 'the scope of review under the common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only into the manner in which the decision was reached.' " *State ex rel. Prosecuting Attorney of Kanawha Cnty. v. Bayer Corp.*, 223 W.Va. 146, 150, 672 S.E.2d 282, 286 (2008) (quoting *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn.Ct. App.2001)).

In the case *sub judice*, the Court of Claims objects to this Court's exercise of our original jurisdiction through the writ of certiorari because, it contends, its decision is not reviewable by this Court insofar as the Court of Claims is not an inferior tribunal within the judicial branch of government. To the extent that this Court finds that this case is proper for consideration upon the requested writ, however, the Court of Claims urges this Court to limit our review of its decision to the procedure used in rendering its ruling. *Citing* Syl. pt. 4, in part, *Lower Donnally Ass'n v. Charleston Mun. Planning Comm'n*, 212 W.Va. 623, 575 S.E.2d 233 (2002) (holding that judicial review of legislative actions upon petition for writ of certiorari is "limited to consideration of whether the record discloses

that procedures required by law have been followed"). Despite the protestations of the Court of Claims, we find this case to be proper for our review by certiorari.

We previously have explained that

[t]he court of claims was established by the Legislature "to provide a simple and expeditious method for the consideration of claims against the State" which cannot be decided within the normal judicial system. W.Va.Code §§ 14–2–1–12 (1985 Replacement Vol.). The jurisdiction of the court includes those "[c]laims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the State or any of its agencies, which the State as a sovereign commonwealth should in equity and good conscience discharge and pay." W.Va. Code § 14–2–13(1) (1985 Replacement Vol.).

*G.M. McCrossin, Inc. v. West Virginia Bd. of Regents,* 177 W.Va. 539, 540 n. 2, 355 S.E.2d 32, 33 n. 2 (1987). Thus, an individual's right to seek recourse from the State via the Court of Claims is established by and well grounded in statute. *See, e.g.,* W.Va.Code § 14–2–1 (1967) (Repl.Vol.2009) ("The purpose of this article is to provide a simple and expeditious method for the consideration of claims against the State that … cannot be determined in the regular courts of the State[.]"); W.Va.Code § 14–2–12 (1977) (Repl.Vol.2009) & W.Va.Code § 14–2–16 (1967) (Repl.Vol. 2009) (describing procedure for filing notice of claim in Court of Claims); W.Va.Code § 14–2–13(1) (1967) (Repl.Vol.2009) ("The jurisdiction of the court … shall extend to the following matters: Claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the State or any of its agencies, which the State as a sovereign commonwealth should in equity and good conscience discharge and pay . . . ."). With respect to statutory remedies, generally, we have observed that certiorari is an appropriate method by which to seek review of such decisions when the statutes, themselves, have not provided for further relief. In keeping with this prior case law, we now hold that, "[w]herever by a dearth in a statute there is given no statutory right of review, the writ of certiorari is available in order to obtain judicial review of the findings of an [inferior tribunal]." *City of Hunting-*

*ton v. State Water Comm'n,* 135 W.Va. 568, 576, 64 S.E.2d 225, 230 (1951). *Accord Low v. County Court of Lincoln Cnty.,* 27 W.Va. 785, 786 (1886) (finding certiorari to be appropriate method of review where statute establishing cause of action failed to provide for review of decision thereof), *overruled on other grounds by Pittsburg, Cincinnati & St. Louis Ry. Co. v. Board of Pub. Works,* 28 W.Va. 264 (1886). Therefore, insofar as the statutes allowing an individual to seek redress for State-occasioned injuries from the Court of Claims provide for the adjudication of a claim but do not provide for further review of the resulting decision, resort to the writ of certiorari is appropriate. *See, e.g.,* W.Va.Code § 14–2–27 (1967) (Repl.Vol.2009) (commenting that "[a]ny final determination against the claimant on any claim presented as provided in this article shall forever bar any further claim in the court arising out of the rejected claim" but not providing avenue for review of ruling rendered by Court of Claims).

This conclusion, *i.e.,* that a petition for writ of certiorari to this Court is available to review decisions of the Court of Claims, is consistent with our prior recognition that

this Court obviously may review decisions of the court of claims under the original jurisdiction granted by article VIII, section 2 of our Constitution, through proceedings in mandamus, prohibition, or certiorari. *See, e.g.,* Syl. Pt. 3, [*City of Morgantown v.*] *Ducker,* 153 W.Va. 121, 168 S.E.2d 298 [ (1969) ]. Review in this fashion is necessary because the court of claims is not a judicial body, but an entity created by and otherwise accountable only to the Legislature, and judicial recourse must be available to protect the basic principles of separation of powers.

*G.M. McCrossin, Inc.,* 177 W.Va. at 541 n. 3, 355 S.E.2d at 33 n. 3. *See also Wheeling & Elm Grove R.R. Co. v. Town of Triadelphia,* 58 W.Va. 487, 497, 52 S.E. 499, 503 (1905) ("The office of a writ of *certiorari* is to bring to a superior court for review the record and proceedings of an inferior court, an officer, or a tribunal exercising judicial functions, to the end that the validity of the proceedings may be determined, excesses of jurisdiction re-

strained, and errors, if any, corrected. It is not essential, however, that the proceedings should be strictly and technically judicial in the sense in which that word is used when applied to courts of justice, but it is sufficient if they are *quasi-judicial.* It is enough if they act judicially in making their decision, whatever may be their public character." (internal quotations and citations omitted)). Therefore, the Foundation's petition for a writ of certiorari requesting this Court to review the decision of the Court of Claims is a proper method of seeking relief from such ruling.

Having thus determined that the writ of certiorari is a proper means of seeking relief from a decision of the Court of Claims, we now apply the standard for the issuance of such a writ to our consideration of the case *sub judice.*

### III.

### DISCUSSION

 The sole issue presented by the Foundation for our resolution in this case is whether the Auditor properly charged certification fees upon the Foundation's property when said property had not been certified to the Auditor pursuant to W.Va.Code § 11A–3–8 (2010) (Repl.Vol.2010). In this regard, the Foundation contends that, because its property was not subject to a sheriff's tax sale, and, thus, was not unsold property remaining at the conclusion of the sheriff's tax sale, its property does not meet the definition of "certified property" set forth in W.Va. Code § 11 A–3–8(a). Thus, argues the Foundation, because its property was not "certified property" within the meaning of W.Va. Code § 11A–3–8(a), the Auditor lacked the authority to charge the Foundation certification fees thereon pursuant to W.Va.Code § 11A–3–39(a) (1994) (Repl.Vol.2010) because, contends the Foundation, this section governs the redemption of only those types of property enumerated in W.Va.Code § 11A–3–38 (1994) (Repl.Vol.2010), *i.e.,* "real estate certified to the Auditor pursuant to section eight [§ 11A–3–8] of this article" and "nonentered real estate." Insofar as the Foundation's property is neither of these two types of property, the Foundation argues that the Auditor wrongfully charged it certi-

fication fees as a condition to the redemption of its property.

The Auditor disputes the Foundation's characterization of the governing statutory law and its application of these statutes to the facts of the case *sub judice.* Rather, the Auditor contends that the sheriff transferred the Foundation's property to the Auditor pursuant to the sheriff's mandatory, nondiscretionary duty to prepare a list of delinquent, suspended, and redeemed lands. *See* W.Va.Code § 11A–3–9 (2010) (Repl.Vol.2010) & W.Va.Code § 11A–3–11 (2010) (Repl.Vol. 2010). Thereafter, once the Auditor received the Foundation's delinquent property, he had a mandatory, nondiscretionary duty to charge certification fees on said property as a condition of its redemption. *See* W.Va. Code § 11A–3–39(a).

In spite of these convoluted arguments and circular reasoning, the solitary issue before us is rather straightforward. Simply stated, the question posited by the taxpayer Foster Foundation in this case is whether the Auditor may charge certification fees on property that has not passed through a sheriff's tax sale. The short answer to this query is yes. However, before we explain our resolution of the instant controversy, it is helpful to consider the context within which this issue has arisen.

For taxation purposes, property is designated as "delinquent" when taxes have been assessed on that parcel of property but the taxpayer has not paid those taxes. *See* W.Va.Code § 11A–1–3(a) (1990) (Repl.Vol. 2010) (referring to taxes as delinquent when they have not been paid by the date upon which they are due); W.Va.Code § 11A–2–11 (2004) (Repl.Vol.2010) (describing manner in which sheriff creates list of delinquent properties based upon real estate on which assessed taxes are delinquent). *Accord* Syl. pt. 2, *Pearson v. Dodd,* 159 W.Va. 254, 221 S.E.2d 171 (1975) ("Delinquent lands are those upon which the owners have failed to pay property taxes and which have been listed by the sheriff as delinquent and, at public sale, sold by him to individuals or purchased by him for the State."), *overruled on other grounds by Lilly v. Duke,* 180 W.Va. 228, 376 S.E.2d 122 (1988). Here, the Foun-

dation's property was determined to be delinquent because it did not pay the taxes assessed thereon.

■ In the usual course of events, when a taxpayer disagrees with the amount of taxes that have been assessed on his/her property, the aggrieved taxpayer first pays the taxes due on his/her parcel of property and then challenges the allegedly erroneous assessment. In fact, this sequence of pay first, protest later, is the preferred method of challenging allegedly erroneous tax assessments. *See, e.g.,* Syl. pt. 1, *State ex rel. Ayers v. Cline,* 176 W.Va. 123, 342 S.E.2d 89 (1985) ("The statutory scheme for relief from an excessive property tax assessment is for an owner of real property contesting the assessed value thereof to pay the tax assessment under protest, to appeal to circuit court and if the assessment is reduced, to obtain a refund of the overpayment. Payment may be withheld during an appeal in such a case only until the date of the sheriff's sale, or, at the very latest, until the end of the redemption period after such sale has occurred."). Be that as it may, the Foundation elected to challenge the amount of its assessed taxes *before* paying them because it disputed the Assessor's determination that it was required to pay ad valorem taxes; the Foundation based its argument upon the fact that it previously had been exempt from paying ad valorem taxes for a period of several years.

Once property has been determined to be delinquent, the sheriff of that county lists the property for sale at the sheriff's next tax sale of delinquent property. *See generally* W.Va. Code § 11A–2–13 (2006) (Repl.Vol.2010); W.Va.Code § 11A–3–2 (2007) (Repl.Vol.2010). In this case, the Foster Foundation's property was determined to be delinquent, and its property was listed in the Sheriff's list of delinquent properties. However, by agreed order, the Foundation, the Sheriff, the Assessor, and the Tax Commissioner agreed to exempt the Foundation's property from the Sheriff's tax sale, essentially holding the Foundation's property in abeyance pending the resolution of the Foundation's litigation as to whether it would remain exempt from paying ad valorem property taxes. Although the agreed order does not use this terminology, the effect of this agreement essentially was to denominate the Foundation's property as "suspended property," which property is, by definition, excluded from the Sheriff's tax sale.[4] *See* W.Va.Code § 11A–3–7 (1994) (Repl.Vol.2010) (discussing property that has been suspended from the sherrif's tax sale).

Following the conclusion of the sheriff's tax sale, the sheriff is required to prepare a list of all sold, suspended, and redeemed properties. *See generally* W.Va.Code § 11A–3–9 & W.Va.Code § 11A–3–11. After submission to and review by the county commission, the sheriff's delinquent property list is transmitted to the Auditor. W.Va.Code § 11A–3–11(a). In this case, the Sheriff prepared the aforementioned list of delinquent lands and included the Foundation's property on the list of suspended property. Once it had been approved, the county commission then submitted the Sheriff's list, containing the Foundation's property, to the Auditor for

4. While it is not uncommon for property to be suspended from a sheriff's tax sale, the parties' formal agreement in this case to exempt the Foundation's property from the Sheriff's tax sale and the circuit court's ratification thereof by entering the agreed order is a rather unusual course of events. Although the validity of this agreement is not at issue in this case and the order's limited language does not specifically authorize the Foundation to withhold payment of its assessed taxes, we previously have admonished aggrieved taxpayers that they may not agree to withhold the taxes they owe on property that they own. *See* Syl. pt. 3, *In re Elk Sewell Coal,* 189 W.Va. 3, 427 S.E.2d 238 (1993) ("There is no statutory mechanism in the West Virginia Code which authorizes parties to enter into a settlement agreement under which a taxpayer may withhold full payment of property taxes due pending appeal of an assessment."). The better course, however, is to pay the challenged taxes first and then protest such assessment to avoid the possibility of the affected property being determined to be delinquent and, thus, subject to a sheriff's sale. *See* Syl. pt. 1, *State ex rel. Ayers v. Cline,* 176 W.Va. 123, 342 S.E.2d 89 (1985) ("The statutory scheme for relief from an excessive property tax assessment is for an owner of real property contesting the assessed value thereof to pay the tax assessment under protest, to appeal to circuit court and if the assessment is reduced, to obtain a refund of the overpayment. Payment may be withheld during an appeal in such a case only until the date of the sheriff's sale, or, at the very latest, until the end of the redemption period after such sale has occurred.").

further disposition. This process of the Sheriff preparing his delinquent land list and submitting it as required by statute was performed for each of the tax years the Foundation's property remained delinquent, *i.e.*, tax years 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005.

After delinquent property has been transferred to the Auditor, the Auditor may return the property to the county for further correction if the Auditor deems the property to have been wrongly assessed. *See* W.Va. Code § 11A–2–15 (1967) (Repl.Vol.2010). Otherwise, the delinquent property comes within the control of the Auditor, in his role as the State Commissioner of Delinquent and Nonentered Lands. *See* W.Va.Code § 11A–3–33 (1994) (Repl.Vol.2010). Once property has been transferred to the Auditor, certification fees attach thereto and must be paid as a condition to redeem the property. W.Va.Code § 11A–3–39(a) (1994) (Repl.Vol. 2010). The amount of certification fees charged on a particular parcel of property is based upon the amount of the taxes due on the property and the interest that has accrued thereon. Pursuant to W.Va.Code § 11A–3–39(a), the certification fee is calculated by determining the greater of "ten dollars or seven and one-half percent of the total taxes, interest and charges due."

In the case *sub judice*, the Auditor did not return the Foundation's property to the county for a corrected assessment but, rather, retained it for further disposition. Before this Court, the Foundation objects to the Auditor's imposition of the certification fee as a condition to the redemption of its property. Here, the certification fees charged by the Auditor on the Foundation's property were $457,386.79, which constituted 7½% of the delinquent taxes, accrued interest, and charges due pursuant to W.Va.Code § 11A–3–39(a). It goes without saying that if the Foundation had paid its taxes or redeemed its property while it was held by the sheriff, no certification fees would have attached.

Likewise, if the Foundation earlier had redeemed its property from the Auditor, its certification fees would have been lower because the amount of delinquent taxes and accrued interest upon which such fees were based would have been less.

While the parties do not dispute that the factual progression of this case occurred in this manner, they differ as to whether the Foundation's property *should* have been dealt with in this way. In this regard, the Foundation centers its argument on the fact that its property was not offered for sale at the Sheriff's tax sale and did not remain unsold such that it could be classified as certified property as contemplated by W.Va. Code § 11A–3–8.[5] From this argument, the Foundation then concludes that because its property was not certified, it could not be redeemed pursuant to W.Va.Code § 11A–3–38, which statute speaks specifically to the redemption of "nonentered or certified lands," meaning "nonentered real estate" and "real estate certified to the Auditor pursuant to section eight [§ 11A–3–8] of this article." W.Va.Code § 11A–3–38(a). Insofar as those two types of property are the only types of property for which the Legislature has provided redemption guidelines, and because its property fits neither of these definitions, the Foundation continues by opining that it did not, in the technical sense "redeem" its property. If it did not "redeem" its property, then, the Foundation concludes by asserting that the Auditor was not authorized to charge it certification fees when it paid the taxes and accrued interest due on its property. *See* W.Va.Code § 11A–3–39(a).

■ For two reasons, we reject the Foundation's argument. First, the Foundation's contentions are not supported by the referenced statutory language. The statute establishing the Auditor's duty to charge a certification fee as a condition to the redemption of property does not limit its application

---

5. With respect to W.Va.Code § 11A–3–8, "certification" references the manner in which the sheriff transfers property that is not sold at the sheriff's sale to the Auditor:

> If a sheriff is unable to sell the property at auction to recover the delinquent taxes, the sheriff "certifies" the property to the office of the Auditor. In plain language, this means

that the sheriff conveys all of the pertinent information regarding the property to the Auditor so that the Auditor may attempt a second auction sale pursuant to statute.

*Mingo Cnty. Redev. Auth. v. Green*, 207 W.Va. 486, 489 n. 9, 534 S.E.2d 40, 43 n. 9 (2000) (per curiam) (citations omitted).

to only nonentered and land certified pursuant to W.Va.Code § 11A–3–8. Rather, such statute neither includes nor excludes any particular types of property from its operation; instead, it is silent as to the specific types of property to which the certification fee provisions apply. *See generally* W.Va. Code § 11A–3–39. When the Legislature remains silent on a key issue in a statutory enactment, we may look for guidance to the interpretation of the statute by the official charged with its enforcement. *See Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 233–34, 106 S.Ct. 2860, 2868, 92 L.Ed.2d 166 (1986) ("[I]f a statute is silent ... with respect to the question at issue, our longstanding practice is to defer to the 'executive department's construction of a statutory scheme it is entrusted to administer.'" (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)) (additional citations omitted)). *See also* Syl. pt. 3, *State ex rel. ACF Indus., Inc. v. Vieweg,* 204 W.Va. 525, 514 S.E.2d 176 (1999) ("'"Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous." Syllabus point 7, *Evans v. Hutchinson,* [158] W. Va. [359], 214 S.E.2d 453 (1975).' Syllabus point 8, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975)."); Syl. pt. 4, *Security Nat'l Bank & Trust Co. v. First W. Va. Bancorp, Inc.,* 166 W.Va. 775, 277 S.E.2d 613 (1981) ("Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.").

In this case, the Auditor has presented evidence indicating that he has charged the certification fee in a fair, equal, and consistent manner on all delinquent properties that are held by and redeemed from him. From the Legislature's silence, then, it may be inferred that the Legislature intended the certification fee to apply to all types of property that are redeemed by paying delinquent taxes and accrued interest thereon to the Auditor insofar as that is the construction the Auditor has afforded this provision.

Second, the narrow construction and application of W.Va.Code § 11A–3–39 advocated by the Foundation would produce absurd results. Under the Foundation's interpretation of this statute, only property that is classified as nonentered or certified could ever be redeemed from the Auditor. Property that has been suspended from sale, such as the Foundation's property herein, could never be redeemed because, according to the Foundation, the statute does not provide redemption guidelines therefor. *See* W.Va. Code § 11A–3–38. Neither could a property owner redeem his/her property before the issuance of a tax deed because such a redemption is not contemplated by W.Va.Code § 11A–3–38. As such, the logical conclusion to be reached from the Foundation's position is, then, that property that has been suspended from sale or that an owner would desire to redeem simply would remain in the Auditor's coffers forever because W.Va.Code § 11A–3–38 does not contemplate such properties' redemption. Such a result is absurd and does not comport with the stated legislative purposes "[t]o provide for the speedy and expeditious enforcement of the tax claims of the state and its subdivisions"[6] and "to provide for the transfer of delinquent and nonentered lands to those more responsible to, or better able to bear, the duties of citizenship than were the former owners."[7] This Court refuses to afford a statute an illogical construction,[8] and we will not adopt

---

6. W.Va.Code § 11A–3–1(1) (1994) (Repl.Vol. 2010).

7. W.Va.Code § 11A–3–1(2).

8. In this regard, we previously have held that

 [i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

Syl. pt. 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925). *Accord* Syl. pt. 2, *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1938) ("Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.").

the incongruous construction advocated by the Foundation in this case.

Focusing its arguments on its dubious construction of the aforementioned statutes, however, the Foundation fails to address the impact of the Sheriff's mandatory, nondiscretionary duty in notifying the Auditor of the status of all delinquent property in his county upon the disposition of its delinquent property. Similarly, the Foundation also neglects to reconcile with its stated position the Auditor's mandatory, nondiscretionary duty to charge certification fees upon delinquent property that has been transferred to him in his role as State Commissioner of Delinquent and Nonentered Lands. *See* W.Va.Code § 11A–3–33. We find that both of these statutory duties were properly carried out in this case and that, as such, the ultimate disposition of the Foundation's property was achieved as contemplated by the governing statutes.

The law imposing upon the Sheriff a reporting duty and requiring the Auditor to charge certification fees is statutory in nature. When we review matters involving statutory law, we first look to the underlying legislative intent and the statute's language. *See* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). *See also Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995) ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed."). Statutes whose language is plain must be applied as written, while those whose language is ambiguous must be construed before they can be applied. *See* Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."). *See also* Syl. pt. 1, *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied.").

We also must give effect to every word employed in a statutory enactment taking care not to overlook or ignore any of the language used therein. Indeed, "[a] cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. pt. 3, *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. 203, 530 S.E.2d 676 (1999). *Accord State ex rel. Johnson v. Robinson,* 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979) ("It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning."). Thus, when specific words are used in a particular statute, we are bound to accord them meaning. For example, we previously have held that when the word "shall" appears in a statute, it instills a mandatory, directory command to do that action to which it refers. " 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982)." Syl. pt. 1, *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35 (1997). Accordingly, when an actor is directed to act by the word "shall," the actor is compelled to perform the required duty; the performance of such action is mandatory, and no discretion is afforded to the actor to refuse said performance. "A ministerial act or duty is one which is to be performed under a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to or exercise of the judgment of the one doing it upon the propriety of the act's being done." Syl. pt. 2, *Marcum v. Ballot Comm'rs,* 42 W.Va. 263, 26 S.E. 281 (1896).

The first mandatory, nondiscretionary duty that is imposed by the governing statutory law in the case *sub judice,* and which has influenced the disposition of the Foundation's delinquent property, imposes an obligation upon the sheriffs of this State to prepare, following the sheriff's tax sale, a list of all land in the county for which taxes were delinquent and to classify said land as sold, suspended, or redeemed. Specifically, the

plain language of W.Va.Code § 11A–3–9 directs the sheriff of a county to prepare such list, detailing this duty in subsection (a) as follows:

> As soon as the sale provided in section five [§ 11A–3–5] of this article has been completed, the sheriff *shall* prepare a list of all tax liens on delinquent real estate purchased at the sale, or suspended from sale, or redeemed before sale or certified to the Auditor. The heading of the list *shall* be in form or effect as follows:
>
> List of sales of tax liens on real estate in the county of ____, returned delinquent for nonpayment of taxes thereon for the year (or years) 20 , and sold in the month (or months) of ____, 20 , or suspended from sale, or redeemed before sale, or certified to the Auditor.

W.Va.Code § 11A–3–9(a) (emphasis added). This statutory language employs the word "shall," which we have held to carry a mandatory, directory connotation. *See* Syl. pt. 1, *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35.

Once a sheriff has prepared his/her delinquent land list, W.Va.Code § 11A–3–11 further directs the sheriff to submit this list to the county commission clerk who, in turn, transmits the sheriff's delinquent property list to the Auditor. The Auditor, then, notes said properties in delinquent lands records. Specifically, W.Va.Code § 11A–3–11(a) requires

> [w]ithin one month after completion of the sale, the sheriff *shall* deliver the original list of sales, suspensions and redemptions described in section nine [§ 11A–3–9] of this article, with a copy thereof, to the clerk of the county commission. The clerk *shall* bind the original of such list in a permanent book to be kept for the purpose in his or her office. The clerk, within ten days after delivery of the list to him or her, *shall* transmit the copy to the State Auditor, who *shall* note each sale, suspension, redemption and certification on the record of delinquent lands kept in his or her office.

(Emphasis added). The language employed in this section also lacks discretion insofar as the sheriff, the clerk of the county commission, and the Auditor all are obligated to comply with its terms through the Legisla-

ture's employment of the term "shall" in the description of their respective duties.

■ In light of the plain language of these statutory provisions, we therefore hold that, pursuant to W.Va.Code § 11A–3–9 (2010) (Repl.Vol.2010) and W.Va.Code § 11A–3–11 (2010) (Repl.Vol.2010), a sheriff has a mandatory, nondiscretionary duty to prepare a list of sold, suspended, and redeemed properties, which list ultimately is transmitted to the West Virginia State Auditor. Given the lack of discretion afforded to the Sheriff, coupled with his duty to prepare and submit a delinquent land list, the Sheriff was obligated to prepare and submit a list of delinquent lands as required by W.Va.Code § 11A–3–9 and W.Va.Code § 11A–3–11.

Furthermore, the Sheriff was required to include within such list the Foundation's delinquent, albeit suspended, property because his reporting duty carries with it a corresponding obligation to faithfully and accurately prepare such list. While W.Va.Code § 11A–3–12 (1994) (Repl.Vol.2010) permits a sheriff to amend his/her delinquent land list, accuracy nevertheless is required in the preparation of the list in the first instance. In this regard, W.Va.Code § 11A–3–9(b) requires the sheriff, in preparing his/her delinquent land list, to attest as to the list's correctness:

> The sheriff *shall,* at the foot of the list, subscribe an oath, which *shall* be subscribed before and certified by some person duly authorized to administer oaths, in form or effect as follows:
>
> I, ____, sheriff (or deputy sheriff or collector) of the county of ____, do swear that the above list contains a true account of all the tax liens on real estate within my county returned delinquent for nonpayment of taxes thereon for the year (or years) 20 , which were sold by me or which were suspended from sale or redeemed before sale or certified to the Auditor, and that I am not now, nor have I at any time been, directly or indirectly interested in the purchase of any tax liens.

(Emphasis added).

Following the preparation of his delinquent land list, the Sheriff submitted said list to the clerk of the county commission who, in turn,

ultimately transmitted it to the Auditor as compelled by statute. *See* W.Va.Code § 11A–3–11(a). Compliance with this obligation was not optional. Compliance was mandatory insofar as the governing statutory language not only employs the directive "shall" in establishing such duties but also imposes penalties upon a noncompliant sheriff:

> Any sheriff who fails to prepare and return the list of sales, suspensions, redemptions and certifications within the time required by this section *shall* forfeit not less than $50 nor more than $500, for the benefit of the General School Fund, to be recovered by the State Auditor or by any taxpayer of the county on motion in a court of competent jurisdiction. Upon the petition of any person interested, the sheriff may be compelled by mandamus to make out and return the list and the proceedings thereon *shall* be at his or her cost.

W.Va.Code § 11A–3–11(b) (emphasis added). Finally, the Sheriff's list was submitted to the clerk of the county commission and then, ultimately, to the Auditor, again as compelled by statute. *See* W.Va.Code § 11A–3–11(a). Therefore, because the governing statutory law required the Foundation's property to be transferred to the Auditor via the Sheriff's list of delinquent lands, and such transfer was achieved in compliance with the governing statutes, we find no error in the underlying proceedings or in the rulings of the Court of Claims upholding this process.

Moreover, the governing statutory law establishes a second mandatory, nondiscretionary duty that has determined the treatment of the Foundation's delinquent property in this case. W.Va.Code § 11A–3–39 imposes upon the Auditor a mandatory, nondiscretionary duty to charge a certification fee upon property that has been transferred to the Auditor for disposition by him in his role as State Commissioner of Delinquent and Nonentered Lands. Specifically, this statutory language directs the Auditor to prepare a certificate of redemption and to charge certification fees therefor, as follows:

> Upon payment of the sum necessary to redeem, the Auditor *shall* execute a certificate of redemption in triplicate, which certificate *shall* specify the real estate re-

deemed, or the interest therein, as the case may be, together with any changes in respect thereto which were made in the land book and in the record of delinquent lands, *shall* specify the year or years for which payment was made, and *shall* state that it is a receipt for the money paid and a release of the state's lien against the real estate redeemed. The original certificate *shall* be retained in the files in the Auditor's office, one copy *shall* be delivered to the person redeeming and the second copy *shall* be mailed by the Auditor to the clerk of the county commission of the county in which the real estate is situated, who, after making any necessary changes in his record of delinquent lands, *shall* note the fact of redemption on such record, and *shall* record the certificate in a separate volume provided for the purpose.

> *The fee for issuing the certificate of redemption shall be ten dollars or seven and one-half percent of the total taxes, interest and charges due, whichever is greater.*

W.Va.Code § 11A–3–39(a) (emphasis added). As with the provisions instructing a sheriff to prepare a delinquent lands list and to disseminate the same, this section detailing the Auditor's obligation to charge a certification fee is replete with the word "shall." *See id.* When "shall" is used in the wording of a statute, the commanded activity enunciated therein is directory in nature and does not allow for the exercise of discretion as to whether said action will be performed. *See* Syl. pt. 1, *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35. Thus, pursuant to W.Va.Code § 11A–3–39(a), the Auditor was required to charge a certification fee upon every piece of property sought to be redeemed from him because this statute does not afford him discretion to act to the contrary.

Insofar as this statutory language is plain, we hold that W.Va.Code § 11A–3–39 (1994) (Repl.Vol.2010) imposes upon the West Virginia State Auditor a mandatory, nondiscretionary duty to charge a certification fee as a condition of the redemption of delinquent property that has been transferred to the Auditor. Because the Foundation's property had been transferred to the Auditor for disposition, the Auditor was mandated to

charge a certification fee thereon as a condition for its redemption. The certification fee in this case, which was calculated to be $457,386.79, accurately reflects the amount of certification fees the Auditor was statutorily required to charge based upon the greater of either "ten dollars or seven and one-half percent of the total taxes, interest and charges due."[9] W.Va.Code § 11A-3-39(a). Thus, if the Foundation desired to redeem its property, it was required to pay the certification fees charged by the Auditor pursuant to his statutory directive to do so. *See id.* Accordingly, because the Auditor was statutorily compelled to charge the certification fee at issue in this case before the Foundation's delinquent property could be redeemed and because the Auditor did not err in his calculation of the certification fee charged to the Foundation, we find the Auditor's actions to have been proper. We further find no error with the decision of the Court of Claims to uphold the Auditor's decision to charge this certification fee. Because the Court of Claims properly adjudicated the Foundation's claim, we conclude that the requested writ of certiorari should be denied. *See Bayer*, 223 W.Va. at 150, 672 S.E.2d at 286 (establishing procedure for issuance of writ of certiorari).

## IV. CONCLUSION

For the foregoing reasons, the requested writ of certiorari is hereby denied.

Writ Denied.

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

KETCHUM, J., dissenting:

I disagree with the majority opinion's conclusion that the State Auditor was required, or even entitled, to charge an additional $457,386.79 "certification fee" under the facts of this case.

The record makes clear that there was a legitimate dispute as to whether the real estate owned by the Foster Foundation ("Foundation") was exempt from real estate taxes in Cabell County, West Virginia. A lawsuit was filed contesting the assessment and, as part of that lawsuit, the parties *negotiated* a pre-trial agreement. This pre-trial agreement was meant to allow the court time to rule whether Foster Foundation's property was exempt from real estate taxes and, in the meantime, to preclude the Foundation's property from being conveyed to the State Auditor or from being part of a sheriff's tax sale. The court ratified this negotiated pre-trial agreement in an order.

Following our decision in *In re Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008), where we held that the Foundation's property was subject to the disputed tax, the Foundation promptly paid the $4,303,399.97 in taxes that were in dispute, plus interest in the amount of $1,794,148.03. However, the State Auditor charged the Foundation an additional "certification fee" of $457,386.79.

Our law does not allow the State Auditor to charge a certification fee unless the property was part of a sheriff's tax sale and the property was thereafter certified to the Auditor as having been "sold or unsold" at the tax sale. The majority opinion incorrectly concludes that *W.Va.Code § 11A-3-39*, authorizes the certification fee because the Foundation's property had been reported to the State Auditor as delinquent. However, a close reading of *W.Va.Code § 11A-3-39*, shows that it applies only to property that · has been redeemed pursuant to *W.Va.Code § 11A-3-38*.

*W.Va.Code § 11A-3-38*, provides, in relevant part, that the "owner of any real estate certified to the Auditor pursuant to [*W.Va.Code § 11A-3-8*], or of any nonentered real estate subject to the authority of the Auditor ... may redeem such real estate from the Auditor at any time prior to the certification of such real estate to the deputy commissioner[.]" It is clear that *W.Va.Code § 11A-3-38*, applies to two scenarios. First, to property that has been certified to the Auditor following an unsuccessful sheriff's tax sale. Second, to nonentered lands. There is no claim that the Foundation's prop-

---

9. The certification fee the Auditor charged to the Foundation was calculated at the rate of 7½% of "the total taxes [$4,303,399.97], interest [$1,794,-148.03] and charges [$942.50] due." *See* W.Va. Code § 11A-3-39(a).

erty is a "nonenetered" land for purposes of W.Va.Code § 11A–3–38, which means that any authority for the Auditor's "certification fee" must be derived from *W.Va.Code,* 11A–3–8.

*W.Va.Code* § 11A–3–8, provides that where a sheriff has held a tax sale, and "no person present bids the amount of taxes, interest and charges due on any real estate offered *for sale,* the sheriff shall certify the real estate to the Auditor ... subject, however, to the right of redemption provided by [*W.Va.Code,* 11A–3–38]." (Emphasis added). The Foundation's property was not presented at a sheriff's tax sale, and *W.Va.Code* § 11A–3–8, is therefore inapplicable. The Foundation is not the "owner of any real estate certified to the Auditor pursuant to [*W.Va.Code,* 11A–3–8]" as that term is used in *W.Va.Code* § 11A–3–38, and therefore, the Auditor was not entitled to charge it a certification fee under *W.Va.Code* § 11A–3–39. Nevertheless, the Auditor argues that while the property was suspended from a tax sale, it was certified to the Auditor by the sheriff as a suspended sale. However, no statute, regulation, or law allows the auditor to charge a certification fee for property suspended from a tax sale.

Even if our law clearly provided that the certification fee was proper, I would bar the fee on the grounds of equity. The Foundation had a legitimate argument that the *ad valorem* tax was inapplicable to its property. It lawfully contested the tax assessment, and filed a law suit to prosecute its claim. As part of that lawsuit, a pretrial agreement was reached with the Cabell County Sheriff and the State of West Virginia. It was clearly the intent of the parties that the Foundation's property not be sold during the pendency of the suit and that the Foundation, if unsuccessful, would pay the tax due, plus interest. The Foundation kept its promise. The State did not and is receiving a $457,386.79 windfall because it is reneging on its agreement not to force the payment of the real estate taxes at a sheriff's sale until a court determined whether the Foundation's property was exempt from real estate taxes.

Evidently, the maxim that "a deal is a deal" does not apply when you are dealing with the State of West Virginia.

I respectfully dissent.