575 S.E.2d 233

**LOWER DONNALLY ASSOCIATION, an unincorporated association of individuals residing in the City of Charleston, West Virginia, by and through their president, Bill Via, Petitioner Below, Appellant**

v.

**CHARLESTON MUNICIPAL PLANNING COMMISSION and the City of Charleston, West Virginia, a municipal corporation under the laws of the State of West Virginia, Respondents Below, Appellees.**

No. 30470.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2002.

Decided Nov. 27, 2002.

Mark A. Sadd, Lewis, Glasser, Casey & Rollins, L.L.P., Charleston, for Appellant.

Ancil G. Ramey, Michelle E. Piziak, Steptoe & Johnson, P.L.L.C., Charleston, for Appellees.

ALBRIGHT, Justice.

Lower Donnally Association (hereinafter "Appellant") appeals the December 6, 2001, order of the Circuit Court of Kanawha County by which Appellant's petition for a writ of certiorari to review certain planning and zoning actions taken by the Charleston Municipal Planning Commission (hereinafter "Appellee") was dismissed. The underlying controversy in this case concerns the construction of an apartment or town house complex in Appellant's neighborhood, which is zoned as a single-family residential area. Appellant argues that the lower court's dismissal of its petition for certiorari was based on the erroneous conclusion that the court lacked subject matter jurisdiction because Appellee's action was a recommendation of

an advisory body rather than a decision of a governing body. Although the issue presented has been rendered technically moot because the apartment project at the heart of the controversy is practically complete, we proceed to examine the matter in order to provide guidance in addressing such issues in the future. As a result of our review of the petition for appeal, briefs, arguments and certified record, the order of the lower court is reversed.

## I. Factual and Procedural Background

This case concerns approximately nine acres of undeveloped property near the intersection of Lower Donnally Road and Chesterfield Avenue in Charleston, West Virginia. According to Appellant, it is an unincorporated association acting on behalf of two hundred twenty-five residents who live in the neighborhood of the nine-acre tract. Appellant's property, as well as the nine-acre tract, were zoned R–4, a designation used to identify single family residential districts.

On July 17, 2001, Chesterfield Apartments, LLC, filed an application with Appellee to rezone the undeveloped nine acres from R–4 to a planned unit development district (hereinafter "PUD") in order to enable Chesterfield Apartments to build a twenty-four unit town house complex.[1] Appellant notes that approval of Chesterfield Apartments' application would require an amendment to the city's comprehensive plan. A bill to cause the proposed change was introduced in the Charleston City Council on or about August 6, 2001, as Bill No. 6826. The bill was referred to Appellee, which on August 8, 2001, conducted a public hearing on the rezoning request and the proposed bill. At the conclusion of the public hearing, Appellee voted to support the application and bill and related its action to the council's planning committee, which also approved the measures. The

planning committee reported its favorable action on the bill to the city council, which in turn passed Bill No. 6826 in October 2001.

Following Appellee's action on the matter, Appellant filed a petition for a writ of certiorari in the circuit court on September 6, 2001, seeking review of the planning commission's actions pursuant to the provisions of West Virginia Code § 8–24–38 (1969) (Repl. Vol. 1998). Appellee moved to dismiss the petition, and by order dated December 6, 2001, the lower court granted the dismissal on the ground that it lacked subject matter jurisdiction. It is from the lower court's dismissal of the petition for writ of certiorari that this appeal is taken.

## III. Standard of Review

This appeal is filed as a challenge to the lower court's dismissal of a petition for writ of certiorari. In *Conrad v. ARA Szabo,* 198 W.Va. 362, 369, 480 S.E.2d 801, 808 (1996), this Court stated:

> We exercise plenary review over a circuit court's decision to grant either a motion to dismiss or a summary judgment. Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995) (This Court reviews *de novo* a circuit court's order granting a motion to dismiss a complaint).... In determining whether a motion to dismiss ... is appropriate, we apply the same test that the circuit court should have applied initially. *See Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 66, 99 S.Ct. 383, 387, 58 L.Ed.2d 292, 299 (1978); *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (1995).

We have likewise found that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an

---

1. According to Appellee's explanation which relies in large part on the city's zoning regulations, a PUD

> is a highly structured and regulated zoning district designed to provide for greater flexibility, and thereby encourage more creative design of residential developments than generally is possible under conventional zoning regulations. PUD regulations are intended to promote more economical and efficient use of the land, while providing for a harmonious

variety of housing choices, a higher level of urban amenities, and the preservation of open space. Not only are the permitted uses prescribed, but also [are] such features as (1) the intensity of use; (2) the minimum size; (3) the height of buildings; (4) setbacks; (5) parking; (6) landscaping and screening; (7) signs; and (8) rigorous requirements for the submission and approval of PUD applications. (Internal quotations and citations omitted.)

interpretation of statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

## IV. Discussion

■ As a threshold matter, we note that this Court was informed during oral argument that the construction of the apartment complex at the center of the controversy in this case is virtually completed. Although the case is thus rendered moot, this Court may nevertheless employ its discretion in proceeding to address the pertinent issues raised. Syl. Pt. 1, *Means v. Sidiropolis,* 184 W.Va. 514, 401 S.E.2d 447 (1990). The factors we contemplate when determining whether to address issues rendered technically moot are set forth in syllabus point one of *Israel by Israel v. West Virginia Secondary Schools Activities Commission,* 182 W.Va. 454, 388 S.E.2d 480 (1989), as:

> [F]irst, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Applying these criteria to the instant case, we conclude zoning and planning actions in the context presented by this case have such pervasive and direct bearing on the public interest that our examination of the issues involving review of these actions is warranted in order to provide direction for future cases which undoubtedly will arise.

Appellant's fundamental argument in the instant case is that West Virginia Code § 8-24-38 creates a statutory right for aggrieved parties to seek review of the final actions of a city planning commission by means of a writ of certiorari. Appellees' response, relying in large part on the case of *Garrison v. City of Fairmont,* 150 W.Va. 498, 147 S.E.2d 397

(1966), is that such a writ may not run against the planning commission because it is a wholly advisory body making a mere "recommendation." To appropriately address this issue, we move forward with an examination of the applicable statutes and a closer look at *Garrison.*

The framework for the planning and zoning activities of counties and cities is set forth in enabling legislation, which appears in West Virginia Code chapter eight, article twenty-four, first adopted by the Legislature in 1959, recodified in 1969 and amended only rarely since that time. Three broad categories of planning and zoning activities are contained within the statutory scheme: (1) development and amendment of comprehensive plans; (2) approval and administration of subdivision plans and regulations; and, (3) enactment, administration and subsequent amendment of zoning ordinances.

As a part of its overall planning and zoning design, the enabling legislation authorizes the development of planning commissions:

> The governing body of every municipality ... may by ordinance create a planning commission in order to promote the orderly development of its governmental units and its environs....

> In accomplishing this objective, it is intended that the planning commission shall serve in an advisory capacity to the governing body of a municipality....

W.Va.Code § 8-24-1 (1969) (Repl. Vol. 1998). The responsibilities of planning commissions are further defined in or by means authorized in the enabling legislation, as manifested throughout the following discussion.

The 1959 legislative scheme for full implementation of the planning and zoning activities of cities and counties contemplates an initial adoption of a comprehensive plan for a city or county, the consequent development of subdivision regulations and their adoption, followed by a zoning ordinance drawn in accord with the comprehensive plan. The statute lays out detailed provisions for how the zoning ordinance and comprehensive plan thus adopted by a city may thereafter be amended. The enabling statute also contains

some specific requirements for how each part of the planning and zoning scheme is to be administered, including a separate procedure for obtaining a permit to improve specific locations in accord with the comprehensive plan previously adopted.[2]

Zoning ordinances adopted prior to the 1959 enactment are expressly validated "as though previously adopted as a comprehensive plan ... or parts thereof ..." until a city chooses to repeal, amend or totally revamp its planning and zoning process, all under the procedures established by the 1959 enactment and its subsequent amendments. W.Va.Code § 8–24–49 (1969). The record in the case before us does not disclose whether the City of Charleston's present planning and zoning processes originated prior to 1959 and have merely been amended under the post 1959 procedures, or have since been totally revised under the process first enacted in 1959.

In any event, the overall legislative scheme assigns particular duties and responsibilities to the planning commission, to a board of zoning appeals, to particular offices or officers designated by the city or county and to the city council or county commission (as the case may be) to which the planning and zoning processes apply.

Of particular relevance to the present case, the statute vests in the planning commission the duty to prepare the comprehensive plan after possible consideration of a long list of factors,[3] and requires that any amendments to the plan after it has been adopted be considered under the procedures set forth in the statute for the initial adoption of the comprehensive plan.[4] The final adoption of the comprehensive plan is left to the city council or county commission. However, pursuant to West Virginia Code § 8–24–22 (1969), if the council or commission amends or rejects the plan, it must return it to the planning commission with a written statement of reasons for its action for review by the planning commission. The planning com-

mission in turn may consider those reasons and submit a response to the city council or county commission, which body then has the final say regarding amendment, adoption or rejection of the plan. The statute further provides that any amendment, supplement or change of the rules and regulations of the *zoning ordinance* adopted by city council or county commission constitutes an amendment of the *comprehensive plan.*[5]

In the process of adopting the comprehensive plan or a later amendment to it, the planning commission is required to publish notice of and hold a hearing.[6] If the planning commission wishes to sanction the plan or an amendment to it after the hearing, the planning commission is required by West Virginia Code § 8–24–19 (1969) to *"adopt"* the plan or amendment by resolution and *"recommend"* the enabling ordinance to the city council or county commission. Of course, only a city council or county commission may *"adopt"* or enact the ordinance enacting or amending the comprehensive plan. However, if a city council or county commission initially rejects or amends the recommendation of a planning commission, even when dealing only with an amendment to a previously adopted comprehensive plan, it is required to adhere to the above-related provisions of West Virginia Code § 8–24–22 (1969). In other words, a city council or county commission in such circumstance is to submit its action to the planning commission, with a statement of its reasons, for further consideration by the planning commission (conceivably by both again *"adopting"* the plan or amendment and *"recommending"* it) and possible re-submission to the city council or county commission, as the case may be.

With respect to the platting and control of subdivisions, the legislative scheme leaves the contents of the rules and regulations for subdivisions largely to the discretion of the city council or county commission. *See generally* W.Va.Code §§ 8–24–28 through –35. However, after a comprehensive plan and an

---

**2.** For specific statutory requirements regarding improvement permits, *see* West Virginia Code §§ 8–24–36, –37.

**3.** W.Va.Code § 8–24–16, –17 (1969).

**4.** W.Va.Code § 8–24–23 (1969).

**5.** W.Va.Code § 8–24–47 (1969).

**6.** W.Va.Code § 8–24–18 (1969).

ordinance establishing such rules and regulations for subdivisions have been adopted by the city or county, no plat of a subdivision may be recorded unless it has been first approved by the planning commission having jurisdiction of the area covered by the subdivision.[7] Moreover, the planning commission is granted "exclusive control" over the approval of plats and plans for a subdivision,[8] effecting a repeal of prior provisions of law vesting such control in the "council or commissioners" of a city[9] or in the state highways department.[10] The only generic statutory definition of "subdivision" is found in West Virginia Code § 39-1-13 (1923) (Repl. Vol. 1997). There, dividing a "tract or parcel of land" into lots "according to a plat or plan of subdivision" for the purpose of selling or offering the lots for sale constitutes a "subdivision."

Despite the broad grant of authority, the actual process for the exclusive consideration of a proposed subdivision by the planning commission is spelled out at length in the statute.[11] Provisions include a tentative approval, public notice and public hearing, express minimum standards for review, particular areas for the exercise of the commission's discretion and specific requirements upon approval of the plat or plan by the planning commission.

Finally, with respect to amendments to zoning rules and regulations after their initial adoption by city or county, the statute permits such changes to be initiated by the planning commission or by the owners of fifty percent or more of the property affected. W.Va.Code § 8-24-46 (1969). As previously noted, any such changes are considered amendments to the comprehensive plan, triggering the requirement that the planning commission hold a public hearing, after publishing notice, and leaving to the planning commission the decision as to whether to *adopt* the change and *recommend* it to city council or the county commissioners, as the case may be, and vesting the planning commission with the power to further review any rejection or amendment of its recommendation by city council or the county commission.

Judicial review of planning commission actions is addressed in West Virginia Code § 8-24-38, which provides that:

A decision of a [planning] commission may be reviewed by certiorari procedure the same as that provided for the appeal of zoning cases from the decision or order of a board of zoning appeals, as hereinafter in this article provided.[12]

A petition for certiorari shall specify the grounds upon which it is alleged that the commission's action is illegal. Such petition must be filed in the circuit court of the county in which the affected land or the major portion thereof is located within thirty days after the date of such decision.

This Court had occasion in *Garrison v. City of Fairmont*, 150 W.Va. 498, 147 S.E.2d 397 (1966), to respond to a certified question from the Circuit Court of Marion County regarding the propriety of judicial review of actions taken by that city's municipal planning and zoning commission and the city's board of directors to amend a zoning ordinance.[13] When presented with the petition

---

7. W.Va.Code § 8-24-28 (1969).

8. W.Va.Code § 8-24-35 (1969).

9. W.Va.Code § 39-1-16 (1923) (Repl. Vol. 1997).

10. W.Va.Code § 17-4-50 (1963) (Repl. Vol. 2000).

11. W.Va.Code §§ 8-24-29 through -34.

12. Review of decisions of the zoning appeals board is governed by the provisions of West Virginia Code § 8-24-59 (1969) (Repl. Vol. 1998), as follows:

Every decision or order of the board of zoning appeals shall be subject to review by certiorari.

Any person or persons jointly or severally aggrieved by any decision or order of the board of zoning appeals may present to the circuit court of the county in which the premises affected are located a petition duly verified, setting forth that such decision or order is illegal in whole or in part, and specifying the grounds of the alleged illegality. The petition must be presented to the court within thirty days after the date of the decision or the order of the board of zoning appeals complained of.

13. *Garrison* was decided before the 1969 recodification of the state's municipal statutes; however, no substantial change has occurred in the relevant statutory provisions since the decision in *Garrison* was handed down.

for writ of certiorari seeking review, the lower court certified the following question to this Court: "Does the petition [for writ of certiorari] of the plaintiffs herein sufficiently allege a cause of action which can be reviewed ... in certiorari?" *Id.* at 499, 147 S.E.2d at 398. As set forth in *Garrison,* the gravamen of the petition for review was denial of due process of the law in that the statutory requirements for effecting a change in the zoning ordinance were not met because the composition of the planning and zoning commission was unlawful. *Id.*

The thrust of this Court's discussion in *Garrison* addressed the constitutional basis for circuit court review of actions of inferior tribunals by means of certiorari, the codification of that authority in West Virginia Code § 53–3–2 and related case law. Any legislative provision for review by certiorari pursuant to the planning and zoning enabling act was summarily determined, without elaboration, to be available only to actions of "the planning commission ... [involving] subdivision plats and other acts on its part which do not require submission to council and on which the commission's decision would be final. Similar provisions [of the statute] obtain as to the zoning appeals board, and the word *decision* is not synonymous with the word *recommendation.*" (Citations omitted.) *Garrison* at 503, 147 S.E.2d at 400. Despite this declaration, the ultimate decision reached in *Garrison* was that certiorari lies only to review judicial or quasi-judicial acts and that certiorari does not lie to review the action of the *governing body* of a city in enacting a zoning ordinance. Moreover, the distinction between decisions and recommendations was not embodied in a syllabus point in the *Garrison* opinion. Syllabus point three of *Garrison* states in relevant part that "[c]ertiorari does not lie to review the action of a *governing body* of a municipality in enacting a zoning ordinance, or an amendment thereto...." (Emphasis added.) In plain words, the action of a city council adopting an ordinance is a legislative act to which certiorari simply does not run. The general definition section of the municipal code, applicable to West Virginia Code chapter eight, makes clear that a city's common council or board of directors is the governing body of a municipality which acts legislatively to set the public policy of the city:

[U]nless the context clearly requires a different meaning:

(1) "Governing body" shall mean the mayor and council together, the council, the board of directors, the commission or other board or body of any municipality, by whatever name called, as the case may be, charged with the responsibility of enacting ordinances and determining the public policy of such municipality....

W.Va.Code § 8–1–2(b)(1).

This Court again discussed the nature of planning commission decisions in *Kaufman v. Planning & Zoning Commission,* 171 W.Va. 174, 298 S.E.2d 148 (1982). That case involved the planning commission's role in the approval and control of subdivisions, where the decision of the planning commission is final, absent judicial review. In syllabus point six, this Court said: "Planning commission decisions are administrative rather than legislative actions." *Id.* at 176, 298 S.E.2d at 150.

Before discussing the relevance of the distinctions drawn in *Garrison* and in *Kaufman* regarding planning commission decisions, we turn first to consider the suggestion in *Garrison* that because the writ of certiorari applied at common law only to judicial and quasi-judicial acts, the Legislature could not have intended to apply that remedy to the administrative functions of planning commissions. We disagree.

■ At common law, a writ of certiorari served the purpose of "bring[ing] before the court for inspection the record of the proceedings of an inferior tribunal in order that the superior court may determine from the face of the record whether the inferior court has exceeded it jurisdiction or has not proceeded according to the essential requirements of the law." 14 Am.Jur.2d Certiorari § 2 (2000). The Legislature is possessed of the power to alter the common law. Syllabus, *Perry v. Twentieth St. Bank,* 157 W.Va. 963, 206 S.E.2d 421 (1974) ("By virtue of the

authority of Article 8, Section 21 [14] of the Constitution of West Virginia and of Code, 1931, 2–1–1 it is within the province of the legislature to enact statutes which abrogate the common law."). The Legislature also is empowered to expand the jurisdiction of this and all other courts of record. W.Va. Const. art. VIII, §§ 3 and 6 (both referencing such other jurisdiction "as may be prescribed by law"). Indeed, the decision by the Legislature to make certiorari available for persons challenging decisions by the board of zoning appeals [15] as well as to those persons challenging the decisions of planning commissions demonstrates that the Legislature sought to assert these powers in order to afford a remedy for the review of the record developed by these bodies as a convenient means of assuring adherence to the requirements of the law without necessarily providing a means of attacking their proper exercise of discretion. *See City of Huntington v. State Water Comm'n*, 135 W.Va. 568, 576, 64 S.E.2d 225, 230 (1951) ("the writ of certiorari is available in order to obtain judicial review of findings of an administrative board" acting in a judicial or quasi-judicial capacity); Syl. Pt. 1, *Quesenberry v. State Road Comm'n*, 103 W.Va. 714, 138 S.E. 362 (1927) (certiorari lies "to review judicial or quasi judicial actions of an inferior board or tribunal").

We are now faced with the task of determining which, if any, of the distinctions made in *Garrison* and *Kaufman* with regard to the nature of planning commission actions is more in keeping with the legislative grant of judicial review of planning commission actions contained in West Virginia Code § 8–24–38. In *Garrison*, distinctions were drawn between legislative and judicial or quasi-judicial actions as well as between recommendations and decisions; in *Kaufman*, the broader distinction between administrative rather than legislative actions was made.

Returning to our earlier discussion of the legislative scheme for planning and zoning, it is very clear that the planning commission action *adopting* a proposed comprehensive plan and recommending an ordinance to effectuate it constitutes more than just a rec-

ommendation. For instance, if the governing body—common council or county commission—amends or rejects an ordinance, it must then be returned to the planning commission for additional action. Perhaps more importantly, since there clearly can be no judicial review of the legislative act of the common council or county commission in adopting, amending or rejecting the ordinance, the last point at which the actions required by law to prepare and submit a proposed comprehensive plan or an amendment of that plan is the act of the planning commission *adopting* the proposed plan. It seems clear that the Legislature intended that citizens asserting that a comprehensive plan has been *adopted* by a planning commission without strict adherence to the requirements of law for the preparation of such a plan should have the remedy of certiorari to test their assertions in a court of law against the actual record of the planning commission proceedings. Such was similarly recognized in *Garrison* through the finding that the administrative actions of a planning commission with respect to approving or refusing to approve a proposed subdivision are subject to judicial review by way of certiorari.

Likewise, the extended provisions for the preparation of an initial zoning ordinance, require, *inter alia*, a preliminary study, a tentative report by the planning commission, preliminary submission to the city council or county commission, subsequent public notice and hearing by the planning commission and submission of a final report before the city council or county commission may proceed to consider an ordinance zoning the affected community. These provisions collectively describe an administrative process, preceding legislative action, that would be subjected to judicial review by way of certiorari in the event citizens observe and assert a failure to follow the detailed requirements of law leading to the planning commission's final report and legislative action by the city council or county commission. Since it is clear again that the action of the city council or county commission, being legislative, is not subject

---

**14.** This provision now appears in Article VIII, § 13 of the West Virginia Constitution.

**15.** W.Va.Code § 8–24–59 (1969).

to such judicial review, it is appropriate that review be accorded for the administrative acts of a planning commission leading to final enactment of an ordinance.

By the same token, subsequent amendments to an existing zoning ordinance would also be subject to judicial review under the enabling statute. Recalling that the process for such amendments constitutes an amendment of the comprehensive plan and that such amendments are subjected by the statute to the same requirements for action by the planning commission as are imposed by law for the adoption of the initial comprehensive plan, it naturally follows that the Legislature intended to subject the record leading to the action of the planning commission *adopting* such amendments to the same possibility for judicial review as it provided with respect to the initial comprehensive plan.

 In light of the foregoing, we hold that the final actions of a planning commission adopting a comprehensive plan or amendments to it, approving or rejecting plats or plans of subdivisions, and adopting a final report with respect to a zoning ordinance, regardless of whether that report is an initial report or a revised and resubmitted report, are subject to review by writ of certiorari regardless of whether the final action of the planning commission is dispositive of the matter or is followed by legislative action of the governing body. Insofar as *Garrison v. City of Fairmont,* 150 W.Va. 498, 147 S.E.2d 397 (1966), conflicts, that holding is hereby modified.

 The conclusion we reach here does nothing to change our decisions which require judicial restraint in the review of legislative decisions made by city and county authorities in planning and zoning matters. *See, e.g.,* Syl. Pt. 1, *Anderson v. City of Wheeling,* 150 W.Va. 689, 149 S.E.2d 243 (1966); Syl. Pt. 7, *Kaufman v. Planning & Zoning Com'n of City of Fairmont,* 171 W.Va. 174, 298 S.E.2d 148 (1982). In this context, any substantive issue under consideration is not ripe for review. Instead, the purpose for judicial review in such situations is to address any alleged procedural irregularities in a planning commission's performance of its responsibilities and thereby provide the opportunity for timely correction if necessary. Consequently, we further hold that judicial review of planning commission final actions that require further action by a governing body is limited to consideration of whether the record discloses that procedures required by law have been followed.[16]

Accordingly, we find that the lower court erred as a matter of law in finding that it lacked subject matter jurisdiction of the issue presented in this case resulting in the improper dismissal of the petition for writ of certiorari. However, remand of the matter would be pointless because there is no relief that we can grant Appellant due to the fact that the issue has been rendered moot. Appellants are left with such remedies they may have by reason of any injury they may sustain as a result of the procedures employed by the planning commission.

Based upon the foregoing, the December 6, 2001, order of dismissal of the Circuit Court of Kanawha County is reversed.

Reversed.

---

16. With respect to the PUD ordinance of the City of Charleston, we do not have before us an inquiry as to whether its procedures regarding review and appeal are correct, but we direct the attention of the city to the provisions of West Virginia Code chapter eight, article twenty-four regarding subdivision plat approval and the mandatory requirements of that statute with which it appears a city ordinance relating to subdivision control should not conflict. While it does not appear from the record before us that the PUD at issue involved a subdivision of a tract, the PUD ordinance in the record strongly suggests that it could be used to subdivide a tract into two or more "lots," to dedicate public streets, or to accomplish other indicia of a "subdivision plan." In that light, various provisions of the PUD ordinance may be seen as being at variance with the enabling statutes for subdivision control. Syl. Pt. 1, *Brackman's, Inc. v. City of Huntington,* 126 W.Va. 21, 27 S.E.2d 71 (1943) (municipal corporation can only perform such functions of government as that conferred by the West Virginia Constitution or enactment of the Legislature). *Accord Toler v. City of Huntington,* 153 W.Va. 313, 168 S.E.2d 551 (1969); *Morgan v. City of Wheeling,* 205 W.Va. 34, 516 S.E.2d 48 (1999).