# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 18-0356

_____

**FILED**

**November 22, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. DANITA LADANYE,
ADMINISTRATRIX OF THE ESTATE OF
JONATHAN S. LADANYE,
Petitioner

V.

WEST VIRGINIA LEGISLATIVE CLAIMS COMMISSION AND
WEST VIRGINIA DEPARTMENT OF TRANSPORTATION,
DIVISION OF HIGHWAYS,
Respondents

_____

PETITION FOR WRIT OF CERTIORARI

WRIT DENIED

_____

Submitted: October 16, 2019
Filed: November 22, 2019

Mark R. Staun
David B. Lunsford
Hartley Law Group, PLLC
Wheeling, West Virginia
and
Sean J. Sawyer
Higinbotham & Higinbotham, PLLC
Fairmont, West Virginia
Attorneys for the Petitioner

Stacy A. Jacques
Francis M. Curnutte
Charleston, West Virginia
Attorneys for the Respondent
West Virginia Department of
Transportation, Division of Highways

Doren Burrell
Staff Attorney
West Virginia Legislature Joint
Committee on Government and
Finance

**Charleston, West Virginia**
**and**
**Daniel W. Greear**
**Chief Counsel**
**West Virginia House of Delegates**
**Charleston, West Virginia**
**and**
**James M. Bailey**
**Chief Counsel**
**West Virginia Senate**
**Charleston, West Virginia**
**Attorneys for the Respondent**
**West Virginia Legislative**
**Claims Commission**

**JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE ARMSTEAD, deeming himself disqualified, did not participate.**

**JUDGE WHARTON, sitting by temporary assignment.**

**SYLLABUS BY THE COURT**

1.      "*Certiorari* is an extraordinary remedy resorted to for the purpose of supply[ing] a defect of justice in cases obviously entitled to redress and yet unprovided for by the ordinary forms of proceeding." Syllabus point 1, *Poe v. Machine Works*, 24 W. Va. 517 (1884).

2.      "Where it is proper to review the proceedings of inferior jurisdictions, where neither appeal, writ of error[,] or *supersedeas* are allowed to lie, resort may be had to *certiorari.*" Syllabus point 1, *Meeks v. Windon,* 10 W. Va. 180 (1877).

3.      Review by writ of certiorari to this Court does not lie as to a non-binding recommendation of the West Virginia Legislative Claims Commission made pursuant to West Virginia Code § 14-2-12 (2019) that does not involve an existing or special appropriation and as to which the West Virginia Legislature has not taken final action.

**Jenkins, Justice:**

Petitioner, Danita Ladanye, Administratrix of the Estate of Jonathan S. Ladanye ("Mrs. Ladanye"), requests this Court to issue a writ of certiorari to vacate an opinion issued on February 27, 2018, by Respondent, the West Virginia Legislative Claims Commission (the "Claims Commission").[1]   On December 9, 2015,[2] Mrs. Ladanye submitted a notice of claim with the Claims Commission against Respondent, the West Virginia Department of Transportation, Division of Highways ("the WVDOT"), following the death of her son.  Subsequent to discovery and a hearing, the Claims Commission issued an opinion that stated it "[was] of the opinion to deny this claim."  Before us now, Mrs. Ladanye contends that this Court has the authority, on a limited basis, to review an opinion issued by the Claims Commission on a writ of certiorari.  Mrs. Ladanye further contends that several errors were committed during the hearing before the Claims Commission and in the resulting opinion.  Upon review of the parties' briefs, oral arguments, the submitted record, and the pertinent authorities, we deny the requested writ of certiorari because we find that the opinion of the Claims Commission is not reviewable by this Court on a writ of certiorari at this procedural posture.

---

[1] The Claims Commission was formerly known as the West Virginia Court of Claims.  *See* W. Va. Code § 14-2-4 (LexisNexis 2019).  Since its creation in 1941, the Claims Commission has been known by several names, including the State Court of Claims, the Court of Claims, and the West Virginia Legislative Claims Commission.  We will use these names interchangeably throughout this Opinion.

[2] We note that Mrs. Ladanye's notice of claim is dated December 9, 2015; however, it appears to have been deemed filed by the Claims Commission on December 14, 2015.  The actual date of filing has no bearing on the outcome of this matter.

# I.

## FACTUAL AND PROCEDURAL HISTORY

On February 17, 2014, there was a single vehicle crash in Monongalia County, West Virginia. Mrs. Ladanye's son, Jonathan S. Ladanye ("Mr. Ladanye"), was one of two passengers in a vehicle operated by James A. Coffman ("Mr. Coffman") that ramped over a snow pile along a bridge parapet wall on Interstate 79. The vehicle then fell approximately thirty feet to the roadway below the bridge. The WVDOT contends that Mr. Coffman accelerated on the entrance ramp of Interstate 79 until the vehicle completed three 360 degree spins on the icy roadway. Mr. Coffman continued to drive the vehicle, fishtailing around the road until he hit and drove over the side of the bridge. Mr. Ladanye was seriously injured from the accident and was subsequently pronounced dead at Ruby Memorial Hospital in Morgantown, West Virginia.[3] According to the WVDOT, Mr. Coffman had a blood alcohol content of .218 and illegal drugs in his system.

On December 9, 2015, Mrs. Ladanye, as administratrix of her son's estate, submitted a notice of claim with the Claims Commission against the WVDOT. In her notice of claim, Mrs. Ladanye alleged that "the fatal crash was caused by, *inter alia*, [the WVDOT's] failure to maintain Interstate 79 pursuant to the standards outlined in [the WVDOT's] Maintenance Division Performance Standards." In particular, Mrs. Ladanye asserted that the vehicle "encountered a large snow pile on the shoulder of the bridge which

---

[3] Mr. Coffman and the second passenger survived the vehicle accident.

2

paralleled and covered the parapet wall of the bridge" and "[w]hen the vehicle encountered the large snow pile that covered the top of the parapet wall, the snow pile acted as a ramp, and the vehicle launched over the parapet wall of the bridge, falling to Fairmont Road below the bridge." Mrs. Ladanye contended that the WVDOT was negligent in failing to timely remove the snow pile and that it was reasonably foreseeable "that a vehicle may be launched over a parapet wall to the ground below if the vehicle encounter[ed] an uncleaned snow pile on the shoulder of the bridge[.]" In response, the WVDOT contended that it was not negligent and that the snow removal activities of the Division of Highways were appropriate and consistent with its policies and procedures. The WVDOT further argued that the sole and proximate cause of the vehicle accident in question was the negligence of Mr. Coffman.

Following discovery, on August 16, 2017, Mrs. Ladanye and the WVDOT engaged in a one-day hearing before the Claims Commission. During the hearing, Mrs. Ladanye produced three witnesses: William Yaskoweak, First Sergeant with the Monongalia County Sheriff's Office; Larry Weaver, designated representative for the WVDOT; and Kevin Beachy, an expert. The WVDOT produced two witnesses: Jerry Pigman, an expert; and Larry Weaver. After the conclusion of the hearing, the Claims Commission, on February 27, 2018, issued its opinion that Mrs. Ladanye's claim for compensation for the death of her son should be denied. The opinion stated that

> [t]he law in the State of West Virginia has been adhered
> to by this Commission consistently in that [the WVDOT] may
> be held liable for defective conditions on its roads only where

3

it has been established that the [WVDOT] knew or should have known of the defective condition and had a reasonable time in which to take corrective action.

Furthermore, the opinion provided that

[a]fter having carefully reviewed the testimony, the exhibits admitted into evidence, the argument of counsel and the findings of facts and conclusions of law submitted at the conclusion of the hearing, the Commission is of the opinion that [the WVDOT] was not negligent in its maintenance of the Westover Bridge parapet when this accident occurred.

It further stated that the Claims Commission was "also of the opinion that there were circumstances surrounding this accident [that] would have made a recovery by [Mrs. Ladanye] difficult." Finally, the opinion concluded that

[a]lthough the Commission is not unmindful of the tragedy [that] has occurred for [Mrs. Ladanye] as the mother of the deceased, the Commission must base its decisions upon the facts and the law as it relates to each claim.

Accordingly, the Commission is of the opinion to deny this claim.

On March 6, 2018, Mrs. Ladanye filed with the Claims Commission a motion to alter or amend the opinion. In her motion, Mrs. Ladanye asserted that several factual findings made by the Claims Commission were clearly wrong based upon the evidence presented at the hearing; that there were "glaring omissions contained within the conclusions of law"; and that the Claims Commission "blindly ignore[d] the evidence presented[,] . . . the weight of such evidence, and the laws of West Virginia." On March 13, 2018, the Claims Commission entered an Order noting that it "considered [Mrs. Ladanye's] Motion . . . requesting a rehearing and reconsideration of the Commission's

4

Opinion[.]" The Claims Commission's March 13, 2018 Order found "that there [were] no new issues or newly-discovered evidence presented in [Mrs. Ladanye's] Motion that mandate either an appeal or a new hearing[.]" The Order stated that the claim "remain[ed] disallowed[4] and dismissed" the matter from the docket of the Claims Commission. From these adverse findings and recommendations, Mrs. Ladanye seeks a writ of certiorari from this Court.

## II.

## STANDARD FOR ISSUANCE OF WRIT

Mrs. Ladanye brought this action seeking a writ of certiorari from the opinion of the Claims Commission. A petition for a writ of certiorari invokes this Court's original jurisdiction. *See* W. Va. Const. art. VIII, §3 ("The [S]upreme [C]ourt of [A]ppeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition[,] and certiorari."). We have stated that a writ of certiorari "is an extraordinary remedy used in cases where there has been an error in justice which cannot be reviewed and corrected by the ordinary forms of procedure." *Ashworth v. Hatcher*, 98 W. Va. 323, 325, 128 S.E. 93, 94 (1924) (citations omitted). Furthermore, we have previously held that "[a] writ of

___

[4] While the statutory provisions that govern the Claims Commission do not precisely define a "disallowed claim," they do define the opposite, an "approved claim." Pursuant to West Virginia Code § 14-2-3 (LexisNexis 2019), an "approved claim" is defined as "a claim found by the [Claims C]ommission to be one that *should* be paid under the provisions of this article." (Emphasis added). Accordingly, it is logical to find that a "disallowed claim" is a claim found by the Claims Commission to be one that *should not* be paid.

certiorari will lie from an inferior tribunal, acting in a judicial or quasi-judicial capacity, where substantial rights are alleged to have been violated and where there is no other statutory right of review given." Syl. pt. 4, in part, *North v. Bd. of Regents*, 160 W. Va. 248, 233 S.E.2d 411 (1977).

Elaborating on the discretionary nature of the writ of certiorari, this Court has explained that

> [t]he extraordinary remedy of certiorari is not granted as a matter of right, but rather is relief that rests within the sound discretion of the Court: "The remedy by writ of *certiorari* . . . to review the judgment of a[n inferior tribunal], is not given as a matter of right, but is awarded by the court . . . for cause on proper case shown." Syl. pt. 1, in part, *Harrow v. Ohio River R.R. Co.,* 38 W. Va. 711, 18 S.E. 926 (1894). *Accord* W. Va. Rev. R. App. Proc. 16(a) ("Issuance by the Court of an extraordinary writ is not a matter of right, but of discretion sparingly exercised."); Syl. pt. 2, in part, *Welch v. County Court of Wetzel Cnty.*, 29 W. Va. 63, 1 S.E. 337 (1886) ("A writ *of certiorari* is not a writ of right, but the issuing of it is dependent on a sound judicial discretion[.]").

*Foster Found. v. Gainer*, 228 W. Va. 99, 104, 717 S.E.2d 883, 888 (2011) (alteration in original). Moreover, a writ of "[*c*]*ertiorari* is an extraordinary remedy resorted to for the purpose of supply[ing] a defect of justice in cases obviously entitled to redress and yet unprovided for by the ordinary forms of proceeding." Syl. pt. 1, *Poe v. Mach. Works,* 24 W. Va. 517 (1884). Therefore, the writ of certiorari is proper only when there exist no other means of reviewing the lower tribunal's decision. Accordingly, "[w]here it is proper to review the proceedings of inferior jurisdictions, where neither appeal, writ of error[,] or

*supersedeas* are allowed to lie, resort may be had to *certiorari.*"  Syl. pt. 1, *Meeks v. Windon,* 10 W. Va. 180 (1877).

Additionally, "[w]hen determining whether to award a writ of certiorari in a particular case, the standard for the issuance of the writ is quite limited."  *Foster Found.*, 228 W. Va. at 104, 717 S.E.2d at 888.  We have held that "[t]he scope of review under the common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only into the manner in which the decision was reached."  Syl. pt. 3, *id.*, 228 W. Va. 99, 717 S.E.2d 883.  With the foregoing in mind, we turn to the parties' arguments.

### III.

### DISCUSSION

Although Mrs. Ladanye presents six questions in her petition for writ of certiorari, we resolve this case based upon the threshold question of whether this Court has the authority to review an opinion issued by the Claims Commission.  Accordingly, we do not reach the remaining five questions presented by Mrs. Ladanye.

In the matter *sub judice*, Mrs. Ladanye asserts that this Court has original jurisdiction through a writ of certiorari to review the underlying opinion of the Claims Commission because in *Foster Foundation v. Gainer*, 228 W. Va. 99, 717 S.E.2d 883 (2011), this Court found it proper to review, by writ of certiorari, a matter from the court

7

of claims. Mrs. Ladanye does acknowledge that after the decision in *Foster Foundation*, there was a recently enacted statute, West Virginia Code § 14-2-28 (LexisNexis 2019), that limits judicial review of the opinions of the Claims Commission. However, Mrs. Ladanye argues that

> the Legislature's attempt to preclude judicial review of findings and recommendations made by the [] Claims Commission is unconstitutional as it seeks to preclude this Court from exercising original jurisdiction review of decisions made by the [] Claims Commission and further interferes with the separation of powers established by the West Virginia Constitution.

In response, the WVDOT contends that this Court does not have the power to review an opinion rendered by the Claims Commission because the Commission is merely "the fact-finding arm" of the West Virginia Legislature ("Legislature") and is not a "court." It further asserts that this very issue was addressed in the new statutory language contained in West Virginia Code § 14-2-28(b). Additionally, the WVDOT argues that, "[u]nlike the Workers['] Compensation Board of Review or other similar quasi-judicial bodies, the Claims Commission has no actual authority to award anything. It simply makes recommendations."

In its original response to this Court, the Claims Commission conceded that this Court may review the determination of a claim before the Claims Commission through a writ of certiorari, but that the scope of the Court's review is limited. However, subsequent to its original briefing, the Claims Commission moved this Court to file supplemental

8

briefing.[5]  In its supplemental brief, the Claims Commission takes an opposite position from its original brief and asserts that the opinions of the Claims Commission are merely recommendations prior to the final determination of the Legislature to approve, modify, or reject the recommendations, and incorporating its decision into an act of the Legislature. Specifically, the Claims Commission argues that an opinion of the Claims Commission is an intermediate event in a legislative procedure and not a final determination of rights.  The Claims Commission asserts that until the Legislature as a whole has enacted a claims bill,[6] no moral obligation exists in law, and the recommendations of the Claims Commission are not enforceable.  The Claims Commission further contends that West Virginia Code § 14-2-28(b) is simply a codification of judicial precedents; it merely provides that the statute is both a definition of the limited role of the Claims Commission and the application of principles from prior decisions of this Court.  Additionally, the Claims Commission argues that the Legislature's review of the recommendations of the Claims Commission is not merely a formality of process, but represents an independent review that may result in a decision by the Legislature contrary to the Claims Commission's recommended decision.

---

[5] By order entered on April 29, 2019, this Court granted the Claims Commission's motion for leave and ordered the supplemental brief to be filed.

[6] A "claims bill" is a special bill that generally compensates a particular individual or entity for injuries or losses against the State which would otherwise be immune from suit.  According to the Claims Commission, a claims bill is "introduced in each house of the Legislature, reviewed in committee, debated on the floor of each house, and ultimately enacted into law by votes of the House of Delegates and the Senate."  Once voted on by the Legislature, it is submitted to the Governor.

9

Mrs. Ladanye did not directly respond to the Claims Commission's argument that its decision is not final, but rather re-asserted her arguments that article eight, section 3 of the West Virginia Constitution provides this Court with original jurisdiction in certiorari and this Court has interpreted that article of the West Virginia Constitution as allowing it to review decisions reached by the Claims Commission.

Mrs. Ladanye's arguments would lead us to believe that judicial review has always been available pursuant to the Claims Commission's statutory framework until the Legislature added subsection (b) to West Virginia Code § 14-2-28 in 2014, and essentially precluded judicial review of the Claims Commission's findings and award recommendations. Given these arguments, the State's significant history regarding sovereign immunity and claims against the State, and the various frameworks of the Claims Commission, we think it necessary to provide a brief historical overview.

Our State constitution provides sovereign immunity protections and does not allow for suits to be brought against the State. Pursuant to article six, section thirty-five of this State's Constitution,

> [t]he State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

10

However, to "ameliorate the harshness of the constitutional bar to suits against the State" the Legislature created the Court of Claims "which [was] authorized to consider and approve claims against the State not otherwise cognizable in the regular courts of the State, and to recommend an award to the Legislature." *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W. Va. 743, 754 n.7, 310 S.E.2d 675, 686 n.7 (1983).

Specifically, in 1941, the Legislature created the State Court of Claims. The Court of Claims' purpose was

> to provide a simple and expeditious method for the consideration of claims against the state that because of the provisions of section thirty-five, article six of the constitution of the state, and of statutory restrictions, inhibitions or limitations, cannot be determined in a court of law or equity; and to provide for proceedings in which the state has a special interest.

W. Va. Code § 14-2-1 (Michie 1941). *See also* Walter M. Elswick, *State Court of Claims*, 49 W. Va. L. Q. 45, 45 (1942). Moreover, § 14-2-4 created the "State Court of Claims" "which shall be a special instrumentality of the legislature for the purpose of considering claims against the state, . . . and recommending the disposition thereof to the legislature." W. Va. Code § 14-2-4 (Michie 1941). Section four further provided that "[a] determination made by the court *shall not be subjected to appeal to or review by a court of law or equity created by or pursuant to article eight of the constitution.*" *Id.* (emphasis added).

Regarding the 1941 statutory framework, the Court in *State ex rel. Adkins v. Sims*, 127 W. Va. 786, 789-90, 34 S.E.2d 585, 586 (1945), stated that "the Court of Claims

11

is not a judicial body, but its function is entirely legislative and recommendatory. Code, 14-2-4. It, alone, does not determine whether a moral obligation rests upon the State of West Virginia." Thus, the Court observed that

> [n]o review lies to its findings except to the extent that the Legislature may adopt or reject. *The Courts consider them only to the extent that they may become a part of the legislative procedure in the particular matters under consideration.* Their findings determine no legal nor moral right that would overcome legislative decision to disregard them.

*Id.*, 127 W. Va. at 790, 34 S.E.2d at 586 (emphasis added).[7]

---

[7] One commentator stated as follows:

> As to the position that the Court of Claims assumes in aiding the legislative determination, *it should be remembered that the Court of Claims has only the capacity of a legislative committee.* In 1941, to assist the legislature to arrive correctly at the proper decision, and to provide an expeditious consideration of claims against the state, the State Court of Claims was created. W. Va. Code c. 14, art. 2, § 1 (Michie, 1943). . . . A determination of the Court of Claims is not subject to appeal or review by a court of law: *the findings of the Court of Claims may be adopted or rejected by the legislature as its own determination of such facts . . . . State ex. rel. Cashman v. Sims*, 130 W. Va. 430, 436, 43 S. E.2d 805, 811 (1947). *This court has no power to issue an award itself; it may only recommend action to the legislature; the legislature, in approving this recommendation is granting its own award. Having no power in itself, the Court of Claims is only a step in the procedure of making a claim against the state.* It serves to "weed out" unworthy claims, and thereby saves the legislature valuable time, while assuring the claimants that their claims have received thorough examination.

Paul James Fourney, Note, *Moral Obligation-Who Shall be the Keeper of the State's Conscience*, 52 W. Va. L. Rev. 57, 64 n.33 (1949) (emphasis added).

In 1953, the statutory framework for allowing claims to be brought against the State was slightly altered. Rather than having the State Court of Claims provide the Legislature with the investigations of claims against the State and the resulting recommendations, the attorney general was enabled with that authority. The new statutory framework provided that "[t]he attorney general is hereby authorized to act as a special instrumentality of the legislature for the purpose of considering claims against the State, . . . *and recommending the disposition thereof to the legislature.*" W. Va. Code § 14-2-3 (LexisNexis 1966) (emphasis added). Furthermore, the statute expressly provided that "[a] determination made by the attorney general *shall not be subject to review by a court of law or equity* created by or pursuant to article VIII of the Constitution." W. Va. Code § 14-2-3. (emphasis added).

Thereafter, in 1967, the Legislature once again altered the statutory framework for these matters against the State. In the 1967 revised statutory framework, the investigatory authority of the attorney general was removed. Instead, West Virginia Code § 14-2-4 (LexisNexis 1991) created the "court of claims." Furthermore, West Virginia Code § 14-2-12 (LexisNexis 1991) set forth the general powers of the court of claims. These powers include the authority of the court of claims to consider each claim in accordance with the provisions set forth in Article 2. Notably absent from the 1967 statutory framework is any language prohibiting review by a court of law or equity. However, during this time, the Court nevertheless continued to note that

13

[t]he Court of Claims is advisory and recommendatory in character to both the legislature and state agencies where . . . an appropriation has not been made in advance of the Court's action. Its function in that manner is not judicial. It is created by the legislature with one of its purposes [being] that of conducting investigations in aid of legislative actions for obtaining information necessary to enable the legislature to discharge its functions and to exercise its power of legislation. *The legislature may accept or reject its findings, or approve or disapprove its recommendations.*

*State ex rel. Stollings v. Gainer*, 153 W. Va. 484, 491, 170 S.E.2d 817, 822 (1969) (citations omitted) (emphasis added).

In 2014, the Legislature again modified this statutory framework with the most relevant change being the adoption of subsection (b) to West Virginia Code § 14-2-28 (LexisNexis 2014), which provides that

[b]ecause a decision of the court is a recommendation to the Legislature based upon a finding of moral obligation, and the enactment process of passage of legislation authorizing payments of claims recommended by the court is at legislative discretion, *no right of appeal exists to findings and award recommendations of the court of claims and they are not subject to judicial review*.

(Emphasis added). Finally, in 2017 the Legislature made one additional alteration by changing the name from the "court of claims" to the "West Virginia Legislative Claims Commission." W. Va. Code § 14-2-4 (LexisNexis 2019).

As stated above, in its supplemental briefing, the Claims Commission argues that this Court does not have jurisdiction to review its opinions because it is only an

14

intermediate part of a legislative procedure, and does not render a final determination of rights. In support of its argument, the Claims Commission argues that "[u]ntil the Legislature has enacted a claims bill, no moral obligation exists in law and recommendations of the Commission are not enforceable."

This Court has, with limited exceptions, consistently acknowledged the importance and necessity of reviewing matters only after a final determination has been made. *See State ex rel. Nationwide Mut. Ins. Co. v. Kaufman*, 222 W. Va. 37, 45, 658 S.E.2d 728, 736 (2008) ("It would be premature on our part to prohibit the circuit court from doing that which it has yet to rule upon."). *See also State ex rel. W. Va. Dep't of Transportation, Div. of Highways v. Kaufman*, No. 18-0864, 2019 WL 1468584, at *5 (W. Va. Apr. 2, 2019) (memorandum decision) ("Critically, parties must exhaust the remedies available to them . . . before initiating original jurisdiction proceedings before this Court.").[8] Furthermore, in *Strahin v. Lantz*, 193 W. Va. 285, 286 n.1, 456 S.E.2d 12,

_____

[8] *But see* Syl. pt. 3, *Lower Donnally Ass'n v. Charleston Mun. Planning Comm'n*, 212 W. Va. 623, 575 S.E.2d 233 (2002) ("The final actions of a planning commission adopting a comprehensive plan or amendments to it, approving or rejecting plats or plans of subdivisions, and adopting a final report with respect to a zoning ordinance, regardless of whether that report is an initial report or a revised and resubmitted report, are subject to review by writ of certiorari regardless of whether the final action of the planning commission is dispositive of the matter or is followed by legislative action of the governing body. Insofar as *Garrison v. City of Fairmont,* 150 W. Va. 498, 147 S.E.2d 397 (1966), conflicts, that holding is hereby modified."). However, we decline to extend the reasoning found in *Lower Donnally Association* to the present matter because we find it to be distinguishable because one of the reasons the Court allowed review was that the Legislature had granted judicial review of planning commission actions pursuant to a

15

13 n.1 (1995), we addressed the finality requirement by "adopt[ing] a practical interpretation that looks to the intention of the circuit court. *See Vaughn v. Mobil Oil Exploration and Producing Southeast, Inc.*, 891 F.2d 1195 (5th Cir.1990) (holding the intention of the circuit court is controlling in final judgment determinations)." While we acknowledge this procedure was in relation to direct appeals, we find it persuasive in the instant matter.

The Legislature has made its intention clear that the opinions of the Claims Commission are merely non-binding recommendations. In the 1941 version of the statute, the Legislature explicitly stated that the State Court of Claims only "recommend[ed] the disposition thereof to the legislature." W. Va. Code § 14-2-4. Again in 1953, the Legislature stated that the attorney general only "recommend[ed] the disposition thereof to the legislature." W. Va. Code § 14-2-3. In 2014, the Legislature once again stated that the Court of Claims' opinion was only "a recommendation[.]" W. Va. Code § 14-2-28(b) (LexisNexis 2014).[9] Additionally, this Court has repeatedly commented since the Claims

---

statute, West Virginia Code § 8-24-38 (repealed 2004). *Id.*, 212 W. Va. at 630, 575 S.E.2d at 240.

[9] The Legislature has also stated that

[n]o liability shall be imposed upon the [S]tate or any state agency by a determination of the commission approving a claim and recommending an award, unless the claim is: (1) Made under an existing appropriation, in accordance with section nineteen [§14-2-19] of this article; or (2) a claim under

16

Commission's initial inception in 1941 that the opinions of the Claims Commission are merely recommendations and advisory in nature. *See State ex rel. McLaughlin v. W. Va. Court of Claims*, 209 W. Va. 412, 415, 549 S.E.2d 286, 289 (2001) (per curiam) ("The Court of Claims is an administrative arm of the West Virginia Legislature, not a court created within the judicial branch of government."); *G.M. McCrossin, Inc. v. W. Va. Bd. of Regents*, 177 W. Va. 539, 543, 355 S.E.2d 32, 36 (1987) ("[A]n award of the court of claims is not binding on the Legislature."); *Pittsburgh Elevator Co.*, 172 W. Va. at 754 n.7, 310 S.E.2d at 686 n.7 ("[T]he recommendation of the Court of Claims is not binding on the Legislature, which may accept or reject the court's findings and approve or disapprove its recommendations."); *Russell Transfer, Inc. v. Moore*, 158 W. Va. 534, 540, 212 S.E.2d 433, 436 (1975) ("It would appear, however, that the Legislature in approving claims against the State would create debts of the State. After satisfaction of all statutory requirements, including those contained in Code, 14-2-23, the debts become final unless subjected to a successful judicial attack."); *State ex rel. Stollings*, 153 W. Va. at 491, 170 S.E.2d at 822 ("The Court of Claims is advisory and recommendatory in character to both the legislature and state agencies where, as here, an appropriation has not been made in advance of the Court's action. Its function in that manner is not judicial. . . . The legislature may accept or reject its findings, or approve or disapprove its recommendations."); *State*

a special appropriation, as provided in section twenty [§ 14-2-20] of this article.

W. Va. Code § 14-2-12 (LexisNexis 2019).

17

*ex rel. Cashman v. Sims*, 130 W. Va. 430, 436, 43 S.E.2d 805, 811 (1947) ("The Legislature may accept or reject [the Court of Claims'] findings or approve or disapprove its recommendations. [*State ex rel.*] *Adkins v. Sims*, 127 W. Va. 786, 34 S.E.2d 585 [(1945)].").

> Furthermore, as this Court has stated, the
>
> [Claims Commission], alone, does not determine whether a moral obligation rests upon the State of West Virginia. No review lies to its findings except to the extent that the Legislature may adopt or reject. The Courts consider them only to the extent that they may become a part of the legislative procedure in the particular matters under consideration. *Their findings determine no legal nor moral right that would overcome legislative decision to disregard them.*

*State ex rel. Adkins*, 127 W. Va. at 790, 34 S.E.2d at 586 (emphasis added). Moreover, "[a] legislative body cannot delegate its final power to a committee, and, except as especially authorized, the committee's acts have no force but remain subject to approval, modification, or rejection of the parent body." *State ex rel. Todd v. Essling*, 128 N.W.2d 307, 314 (1964). The Legislature's intention that the opinions of the Claims Commission are not final because further Legislative action is required is clear.

The 2014 statutory amendment contained in West Virginia Code § 14-2-28(b) does nothing more than return to language that the Legislature had originally adopted

18

in 1941 where the code provisions explicitly stated that no judicial review is allowed.[10]

This 2014 amendment only provides further clarification and explicitly codifies what this

Court has repeatedly stated since at least 1945: the Claims Commission's decision "is a

recommendation to the Legislature based upon a finding of moral obligation, and the

enactment process of passage of legislation authorizing payments of claims recommended

by the commission is at legislative discretion[.]" W. Va. Code § 14-2-28(b).[11] Thus, in

---

[10] To the extent Mrs. Ladanye argues that the 2014 statutory amendment to West Virginia Code § 14-2-28 is unconstitutional, we are not persuaded. First, we have held that "'[e]very presumption is to be made in favor of the constitutionality of a statute, and it can never be declared unconstitutional except when it is clearly and plainly so. A reasonable doubt as to its unconstitutionality must be resolved in favor of the validity of the law.'" *State ex rel. Greenbrier Cty. Airport Auth. v. Hanna*, 151 W. Va. 479, 491, 153 S.E.2d 284, 290-91 (1967) (citations omitted). Second, Mrs. Ladanye has offered nothing more than a skeletal argument. "We have made clear that '[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim[.]' *State, Dep't of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (internal quotation marks and citations omitted)." *State v. Sites*, 241 W. Va. 430, 449, 825 S.E.2d 758, 777 (2019) (alterations in original).

[11] We note that in her supplemental briefing in response to the Claims Commission's assertion that judicial review is not appropriate due to the lack of finality, Mrs. Ladanye does not make any argument that the opinions of the Claims Commission are in fact final, or, even if they were not final, that they are of such a nature that we should exercise our discretion to hear them. The only argument that Mrs. Ladanye puts forth in response is that this Court should follow its past precedent and continue to review Claims Commission opinions upon a writ of certiorari.

With regard to Mrs. Ladanye's argument that we should follow our past precedent in reviewing the Claims Commission's opinions, we find the limited number of cases cited to be readily distinguishable. Specifically, Mrs. Ladanye relies on a footnote in *G.M. McCrossin, Inc. v. W. Va. Board of Regents*, 177 W. Va. 539, 541 n.3, 355 S.E.2d 32, 33 n.3 (1987), in which we said that "this Court obviously may review decisions of the court of claims under the original jurisdiction granted by article VIII, section [3] of our Constitution, through proceedings in mandamus, prohibition, or certiorari." She further relies on two additional cases: *Foster Foundation v. Gainer*, 228 W. Va. 99, 717 S.E.2d 883 (2011), and *State ex rel. Smith v. West Virginia Crime Victims Compensation Fund*,

this context the Claims Commission's opinion is merely a recommendation that is subject to further review of the Legislature and is not binding on the Legislature. Therefore, we hold that review by writ of certiorari to this Court does not lie as to a non-binding recommendation of the West Virginia Legislative Claims Commission made pursuant to West Virginia Code § 14-2-12 (2019) that does not involve an existing or special appropriation and as to which the West Virginia Legislature has not taken final action.

In this matter, there is no allegation or even suggestion that Mrs. Ladanye's claim was made under an existing appropriation or a special appropriation. Moreover, her claim was clearly brought pursuant to the Claims Commission's authority to consider a claim against the State pursuant to West Virginia Code § 14-2-12. Further, there is no dispute that at the time this matter was initially brought before us, there had not been any final Legislative action taken on the claim. Accordingly, the Claims Commission's opinion regarding its mere recommendation to the Legislature is not appropriate for review by this Court at this procedural posture.[12] Because we have disposed of this matter on the

---

232 W. Va. 728, 753 S.E.2d 886 (2013). First, the issue of the finality and actual effect of a Claims Commission opinion was not directly brought before and examined by this Court in those matters. Second, Mrs. Ladanye has failed to consider that in *State ex rel. Smith*, the decision at issue was brought pursuant to an entirely different code section and procedural rules. In the present matter, a claim was brought pursuant to Chapter 14, Article 2. Claims Against the State, while in *State ex rel. Smith*, the claim was brought pursuant to Chapter 14, Article 2a. Compensation Awards to Victims of Crimes. *See State ex rel. Smith*, 232 W. Va. at 730, 753 S.E.2d at 888.

[12] During oral arguments, it was stated that since the filing of this matter with this Court, the Legislature had declined to reject the Claims Commission's opinion regarding this matter. However, because neither party has briefed this precise issue as to

20

threshold question that we do not have the authority to review this non-binding recommendation at this juncture, we do not reach the remaining five questions presented by Mrs. Ladanye.[13]

Based upon the foregoing, we deny the requested writ of certiorari.

## IV.

## CONCLUSION

For the reasons set forth above, there is no basis to reverse the opinion of the Claims Commission at this stage in the procedural posture. Accordingly, the writ of certiorari is denied.

Writ denied.

---

whether review would be appropriate now that the Legislature has acted, or if so, what review would be available, this issue is not properly before us now and we decline to address it. We leave this question for another day.

[13] The Claims Commission also asserted that this Court should deny the requested writ of the certiorari because the elements of the writ had not been satisfied because the Claims Commission is not an "inferior tribunal," that there is no demonstration of a violation of substantial rights, and there is a right of non-judicial review available. Because our holding that we cannot review the non-binding opinion for lack of finality is dispositive, we do not reach these issues.

21